487 So.2d 368 (1986)
Thomas E. CORBETT, Appellant,
v.
The Honorable Joseph P. D'ALESSANDRO, Appellee.
No. 85-1052.
District Court of Appeal of Florida, Second District.
April 18, 1986.
*369 Arnold L. Berman, John R. Day and Robert D. Miller, of Shutts & Bowen, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Gerald B. Curington, Asst. Atty. Gen., Tallahassee, for appellee.
Fenella Rouse, Staff Atty., New York City, on behalf, of the Society For The Right to Die, Inc.
CAMPBELL, Judge.
Appellant, Thomas E. Corbett, appeals a final declaratory judgment which refused appellant a judgment which would have permitted the discontinuance of furnishing nasogastric nutrition to Helen Corbett, appellant's terminally ill wife. Mrs. Corbett passed away naturally two days after the final hearing and prior to a decision by the trial judge. The trial judge rendered his decision in spite of Mrs. Corbett's death because he determined that the nature of the issues involved required a decision, relying upon John F. Kennedy Memorial Hospital Inc. v. Bludworth, 452 So.2d 921 (Fla. 1984). We, likewise, consider that a justiciable issue has been presented and will not decline to rule on the basis that the issue has been made moot by reason of the death of Mrs. Corbett. See also John F. Kennedy Memorial Hospital Inc. v. Bludworth, 432 So.2d 611 (Fla. 4th DCA 1983), rev'd. on other grounds, 452 So.2d 921 (Fla. 1984).
The facts established in this case show that appellant and Mrs. Corbett were married on December 25, 1936. There were no children of the marriage. Mrs. Corbett had no living parents and no brothers or sisters. Mrs. Corbett, at the time appellant's petition for declaratory relief was filed on December 10, 1984, had been in a persistent vegetative state since March 13, 1982, and had received nutritional sustenance solely through a nasogastric tube since the Autumn of 1982. Mrs. Corbett's attending physician, a specialist in Internal Medicine, gave a written opinion on November 26, *370 1984, confirming that Mrs. Corbett was in a permanent vegetative state with no reasonable prospect of regaining cognitive brain function and was being sustained only through the use of nutrition supplied through a nasogastric tube. Two specialists in Neurology concurred, in writing, with the opinion of the attending physician.
At the time of the final hearing, Mrs. Corbett was approximately seventy-five years of age. Mrs. Corbett did not have a living will specifying her desires regarding treatment, nor had she designated, in writing, anyone to make treatment decisions for her.
Appellant and the health care professionals attending Mrs. Corbett were reluctant to discontinue the nasogastric sustenance without judicial intervention and approval for fear of civil and/or criminal liability. Appellant, therefore, sought declaratory relief as to the propriety of the discontinuance of the nasogastric tube. The trial court denied appellant's request for relief.
Appellant's argument focuses on three issues. The first issue urges that "[t]he trial court erred in ruling that the discontinuance of the use of the nasogastric tube in this case is not protected by the Federal and State Constitutions, entitling appellant to the relief sought." We agree that the trial judge erred in holding that there was no Federal or State Constitutional right of privacy on which appellant could sustain the withholding of nasogastric forced sustenance to Mrs. Corbett.
The United States Supreme Court has long recognized that several of the fundamental constitutional guarantees have created a penumbral right to privacy that is no less important than the rights specifically articulated in the constitution. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Florida Constitution, article I, section 23, provides an express right of privacy to natural persons, and we have held that that right extends to incompetent persons who are unable to exercise the right in their own behalf. In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984).
The trial court apparently recognized that this right of privacy exists regarding the removal of extraordinary life-prolonging procedures. It was unable to find, however, that the withholding of sustentance by the withdrawing of the nasogastric tube equated with the right to privacy exercised by the withholding of "extraordinary life-prolonging procedures." The trial court was troubled by the fact that chapter 765, Florida Statutes (Supp. 1984) (Right to Decline Life-Prolonging Procedures), specifically excludes the "provision of sustenance" from its definition of "life-prolonging procedure," which may be the subject of the right to decline. See § 765.03(3)(b). The trial court failed to give full cognizance to the fact that chapter 765 was enacted as a method for a "competent adult" to provide, in advance, a written declaration directing the withholding of life-prolonging procedures in the event of a terminal condition. § 765.04. In the alternative, section 765.07 provides a method whereby certain enumerated persons, together with the attending physician, may act on behalf of an incompetent patient who has not made a declaration in accordance with section 765.04 when the express or implied intent of the patient can be established. Therefore, chapter 765 appears to have been enacted to apply in certain specified situations and was not intended to encompass the entire spectrum of instances in which these privacy rights may be exercised.
As evidence of that intent, section 765.15 provides that chapter 765 is "cumulative to the existing law ... and do[es] not impair any existing rights ... a patient ... may have ... under the common law or statutes of the state." We must construe section 765.15 to protect all constitutional rights a patient might have or else the statute would be unconstitutional. We hold, therefore, that although chapter 765, in those cases to which it applies, excludes the right to decline sustenance providing life-prolonging measures, that chapter does not affect the otherwise existing constitutional rights of persons in a permanent vegetative *371 state with no reasonable prospect of regaining cognitive brain function to forego the use of artificial life sustaining measures.
Our supreme court in Kennedy v. Bludworth, 452 So.2d at 923, stated: "We agree with the district court that terminally ill incompetent persons being sustained only through use of extraordinary artificial means have the same right to refuse to be held on the threshold of death as terminally ill competent persons." (Emphasis supplied.) While no Florida case has previously addressed the termination of artificial feeding devices to sustain life or prolong the moment of death, we see no reason to differentiate between the multitude of artificial devices that may be available to prolong the moment of death. The supreme court, in its above-quoted statement, did not attempt to limit the right to refuse treatment to any particular category of extraordinary artificial means.
Judge Hersey, in his opinion for the fourth district in Kennedy v. Bludworth, 432 So.2d at 619, in a statement not commented upon but apparently approved by our supreme court in Kennedy v. Bludworth, 452 So.2d 921, wrote: "Life sustaining procedures are medical procedures which utilize mechanical or other artificial means to sustain, restore or supplant a vital function, which serve only or primarily to prolong the moment of death, and where, in the judgment of the attending and consulting physicians, as reflected in the patient's medical records, death is imminent if such procedures are not utilized." (Emphasis supplied.)
We are unable to distinguish on a legal, scientific, or a moral basis between those artificial measures that sustain life  whether by means of "forced" sustenance or "forced" continuance of vital functions  of the vegetative, comatose patient who would soon expire without the use of those artificial means. Perhaps, mainly for the satisfaction of our own consciences, we want to acknowledge that we began our deliberations in this matter, as did those who drafted our Declaration of Independence, with the solemnity and the gratefulness of the knowledge "that all men are ... endowed by their Creator with ... Life." It was not without considerable searching of our hearts, souls and minds, as well as the jurisprudence of this great Land that we have reached our conclusions. We forcefully affirm that Life having been endowed by our Creator should not be lightly taken nor relinquished. We recognize, however, that we are also endowed with a certain amount of dignity and the right to the "Pursuit of Happiness." When, therefore, it may be determined by reason of the advanced scientific and medical technologies of this day that Life has, through causes beyond our control, reached the unconscious and vegetative state where all that remains is the forced function of the body's vital functions, including the artificial sustenance of the body itself, then we recognize the right to allow the natural consequence of the removal of those artificial life sustaining measures.[1] Thus, we conclude that the *372 right to have a nasogastric tube removed is a constitutionally protected right that exists under the circumstances of the instant case in conformity with the safeguards as discussed and established in Kennedy v. Bludworth, 452 So.2d 921 (Fla. 1984), Satz v. Perlmutter, 379 So.2d 359 (Fla. 1980), and In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984).
Appellant's second issue on appeal asserts that "[t]he trial court erred in ruling that the Life-Prolonging Procedure Act of Florida controls and prohibits the relief sought." We have already addressed this issue in our previous discussion. Section 765.15 specifically provides that the act is supplemental to existing rights and law. The right protected is a constitutional right which could not be limited by legislation even if section 765.15 did not exist.
Appellant's third point is rendered moot by reason of our holding in regard to the other two points.
We, therefore, reverse the holdings of the trial court below. On remand, the intervening death of Mrs. Corbett renders moot any further action by the trial court.
SCHEB, A.C.J., and SANDERLIN, J., concur.
NOTES
[1] Reaching a similar conclusion, the American Medical Association's Council on Ethical and Judicial Affairs adopted the following statement on March 15, 1986, entitled "Withholding or Withdrawing Life-Prolonging Medical Treatment:"

The social commitment of the physician is to sustain life and relieve suffering. Where the performance of one duty conflicts with the other, the choice of the patient, or his family or legal representative if the patient is incompetent to act in his own behalf, should prevail. In the absence of the patient's choice or an authorized proxy, the physician must act in the best interest of the patient.
For humane reasons, with informed consent, a physician may do what is medically necessary to alleviate severe pain, or cease or omit treatment to permit a terminally ill patient whose death is imminent to die. However, he should not intentionally cause death. In deciding whether the administration of potentially life-prolonging medical treatment is in the best interest of the patient who is incompetent to act in his own behalf, the physician should determine what the possibility is for extending life under humane and comfortable conditions and what are the prior expressed wishes of the patient and attitudes of the family or those who have responsibility for the custody of the patient.
Even if death is not imminent but a patient's coma is beyond doubt irreversible and there are adequate safeguards to confirm the accuracy of the diagnosis and with the concurrence of those who have responsibility for the diagnosis and with the concurrence of those who have responsibility for the care of the patient, it is not unethical to discontinue all means of life-prolonging medical treatment.
Life-prolonging medical treatment includes medication and artificially or technologically supplied respiration, nutrition or hydration. In treating a terminally ill or irreversibly comatose patient, the physician should determine whether the benefits of treatment outweigh its burdens. At all times, the dignity of the patient should be maintained.