

# THE ATTORNEY GENERAL
# OF TEXAS

December 28, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Charles D. Penick
Criminal District Attorney
Bastrop County Courthouse
Bastrop, Texas    78602

Opinion No.   JM-837

Re:   Whether artificial or tube feeding constitutes a life-sustaining procedure for purposes of article 4590h, V.T.C.S. (RQ-1036)

Dear Mr. Penick:

In your inquiry you ask the following question:

> If a patient of a nursing home who meets the definitions of a Declarant and qualified patient of article 4590h, V.T.C.S., the Natural Death Act, is unable to feed him or herself and it becomes necessary to tube feed or artificially feed that person, must the hospital feed that patient artificially or does the procedure for artificially feeding or tube feeding fall under the definition of a life sustaining procedure as defined in section 2, subsection 4, of article 4590h?

Article 4590h, V.T.C.S., makes it possible for any competent adult person, at any time, to execute a directive for the withholding or withdrawal of life-sustaining procedures in the event of a terminal condition. Provisions of the act relating to the execution of such a document provide as follows:

> Sec. 2.   In this Act:
>
> (1) 'Attending physician' means the physician who has primary responsibility for the treatment and care of the patient.
>
> (2) <u>'Declarant' means a person who has executed or issued a directive under this Act.</u>

(3) 'Directive' means:

(A) a document voluntarily executed by the declarant as prescribed by Section 3(a) of this Act;

(B) a nonwritten directive issued by the declarant as prescribed by Section 3(b) of this Act; or

(C) a document executed as prescribed by Section 4D of this Act.

(4) 'Life-sustaining procedure' means a medical procedure or intervention which utilizes mechanical or other artificial means to sustain, restore, or supplant a vital function, which, when applied to a qualified patient, would serve only to artificially prolong the moment of death and where, in the judgment of the attending physician, noted in the qualified patient's medical records, death is imminent whether or not such procedures are utilized. 'Life-sustaining procedure' shall not include the administration of medication or the performance of any medical procedure deemed necessary to provide comfort or care or alleviate pain.

(5) 'Physician' means a physician and surgeon licensed by the Texas State Board of Medical Examiners or a properly credentialed physician holding a commission in the uniformed services of the United States who is serving on active duty in this state.

(6) 'Qualified patient' means a patient diagnosed and certified in writing to be afflicted with a terminal condition by two physicians, one of whom shall be the attending physician, who have personally examined the patient.

(7) 'Terminal condition' means an incurable condition caused by injury, disease, or illness, which, regardless of the application of life-sustaining procedures, would, within reasonable medical judgment, produce death, and where the

application of life-sustaining procedures serves only to postpone the moment of death of the patient.

Directive for withholding or withdrawal
of life-sustaining procedures in
event of terminal condition

Sec. 3.  (a) Any competent adult person may, at any time, execute a directive for the withholding or withdrawal of life-sustaining procedures in the event of a terminal condition. The directive shall be signed by the declarant in the presence of two witnesses not related to the declarant by blood or marriage and who would not be entitled to any portion of the estate of the declarant on his decease under any will of the declarant or codicil thereto or by operation of law. In addition, a witness to a directive shall not be the attending physician, an employee of the attending physician or a health facility in which the declarant is a patient, a patient in a health care facility in which the declarant is a patient, or any person who has a claim against any portion of the estate of the declarant upon his decease at the time of the execution of the directive. The two witnesses to the declarant's signature shall sign the directive.

(b) A competent qualified patient who is an adult may issue a directive by a nonwritten means of communication. The declarant must issue the directive in the presence of the attending physician and two witnesses. The witnesses must possess the same qualifications as are required by Subsection (a) of this section. The physician shall make the fact of the existence of the directive a part of the declarant's medical record and the witnesses shall sign said entry in the declarant's medical record.

(c) A declarant shall notify the attending physician of the existence of a written directive. If the declarant is comatose, incompetent, or otherwise mentally

or physically incapable of communication, another person may notify the physician of the existence of a written directive. The physician shall make the directive a part of the declarant's medical record.

[subsection (d) sets forth a form that <u>may</u> be used by a declarant]

(e) The directive may include other directions, including a designation of another person to make a treatment decision in accordance with Section 4A of this Act for the declarant if the declarant is comatose, incompetent, or otherwise mentally or physically incapable of communication. (Emphasis added.)

A common thread running throughout the act is the expression of the legislature's intent that <u>the desire of a qualified declarant shall be followed</u>. The following provisions of the act reflect the paramount importance of the declarant's wishes and provide for penal sanctions for any person who takes any action to defeat the desire of the declarant. The following sections of the act reflect such legislative intent, as follows:

Sec. 4. (a) <u>A directive may be revoked at any time by the declarant, without regard to his mental state or competency</u> . . . .

. . . .

Sec. 4A. <u>The desire of a qualified patient who is competent shall at all times supersede the effect of a directive</u>. If an adult qualified patient is comatose, incompetent, or otherwise mentally or physically incapable of communication and has issued a directive under this Act without designating a person to make a treatment decision, the attending physician shall comply with the directive <u>unless the physician believes that the directive does not reflect the present desire of the patient</u>.

. . . .

Sec. 4C. (a) If an adult qualified patient is comatose, incompetent, or

otherwise mentally or physically incapable of communication, and the person has not issued a directive under this Act, the attending physician and the legal guardian of the patient may make a treatment decision that may, <u>based on knowledge of what the patient would desire</u>, if known, include a decision to withhold or withdraw life-sustaining procedures from the patient.

(b) If the patient does not have a legal guardian, the attending physician and at least two, if available, of the following categories of persons, in the following priority, may make a treatment decision that may, <u>based on knowledge of what the patient would desire</u>, if known . . . .

. . . .

Sec. 4D.  (a) The following persons may execute a directive on behalf of a qualified patient who is under 18 years of age:

(1) the patient's spouse, if the spouse is an adult;

(2) the patient's parents; or

(3) the patient's legal guardian.

(b) <u>The desire of a qualified patient who is under 18 years of age and who is competent shall at all times supersede</u> the effect of a directive executed in accordance with this section.

. . . .

Sec. 7.    (a) Before withholding or withdrawing life-sustaining procedures from a qualified patient under this Act, the attending physician shall determine that all steps proposed to be undertaken are in accord with the provisions of this Act and <u>the existing desires of the qualified patient</u>.

. . . .

Sec.   8.   (c) <u>No   physician,   health facility, or other  health provider</u>, and   no health care service plan, or insurer issuing insurance, <u>may require any person to execute a directive</u> as a condition for being insured for, or receiving, health care services  nor may the execution  or failure  to execute  a directive  be  considered  in  any  way   in establishing the premiums for insurance.

Sec. 9.   A person who willfully conceals, cancels, defaces,  obliterates,  or  damages the  directive  of   another  without   such declarant's consent  shall  be guilty  of  a Class A misdemeanor.   A person who falsifies or  forges  the  directive  of  another,  or willfully  conceals  or  withholds  personal knowledge of  a  revocation as  provided  in Section 4 of  this Act, with  the intent  to cause  a   withdrawal   of   life-sustaining procedures <u>contrary  to  the wishes  of  the declarant</u>, and thereby, because of any  such act,   directly   causes    life-sustaining procedures to be  withheld or withdrawn  and death  to  thereby  be  hastened,  shall  be subject to prosecution for criminal homicide under the  provisions  of  the  Penal  Code. (Emphasis added.)

The question  you pose  is limited  to the  issue  of whether artificially feeding  or tube feeding  is a  life-sustaining procedure  as those  items are  defined in  the act.   You assume that the  patient is a "<u>declarant</u>" and  a "<u>qualified patient</u>" as those terms are defined in  section 2 of article 4590h.   Senator  Ray Farabee, sponsor in  the Texas Senate of the "Natural  Death Act" (Acts 1977,  65th Leg., ch. 398, at  1085), writing in 41  Texas Bar J.  241 (1978), noted that it was impossible to establish criteria in determining when a person is in a "terminal  condition" or what will constitute a "life-sustaining procedure."  We believe the following observations  by Senator Farabee  to be pertinent to your inquiry.

The law  does  not attempt  to  establish criteria to determine when a person is to be deemed 'terminal'  for   the  purposes   of implementing  such  a  directive.   It  does outline   a   general   statement   of   the circumstances in  which it  will be  legally effective.   Restrictive   criteria   would

> render the law almost immediately obsolete in the face of emerging medical advances. Only the medical profession can determine when a patient's prognosis is hopeless and the death process irreversible.
>
> Similarly, the statute does not itemize what procedures are to be regarded as 'life-sustaining' and separate from standard medical treatment which may be given regardless of a patient's condition. Such distinctions must be made by medical practitioners according to accepted medical standards. For instance, many physicians maintain that therapy, such as the use of antibiotics, qualifies as 'extraordinary' when the patient is a cancerous, comatose 90-year old. On the other hand, administration of pain-killing drugs falls in a separate category. (Emphasis supplied).

Turning to other jurisdictions, in *Corbett v. D'Alessandro*, 487 So.2d 368, 371 (Fla. Dist. Ct. App. 1986), the matter of what constitutes a "life-sustaining procedure" was addressed as follows:

> Judge Hersey, in his opinion for the fourth district in *Kennedy v. Bludworth*, 432 So.2d at 619, in a statement not commented upon but apparently approved by our supreme court in *Kennedy v. Bludworth*, 452 So.2d 291, wrote: 'Life sustaining procedures are medical procedures which utilize mechanical or other artificial means to *sustain*, restore or supplant a vital function, which serve only or primarily to prolong the moment of death, and where, in the judgment of the attending and consulting physicians, as reflected in the patient's medical records, death is imminent if such procedures are not utilized.'

Although artificial or tube feeding may constitute a life-maintaining procedure within the meaning of article 4590h, V.T.C.S., whether it will serve to artificially prolong the moment of death is a question which depends upon the expertise of the medical profession for its resolution in each individual case. While the resolution of this question is for the medical profession, the legislature has made it plain that care should be taken

that a <u>qualified declarant's</u> wishes be observed in withdrawing life-sustaining procedures when there is a terminal condition.

### S U M M A R Y

Although artificial or tube feeding may constitute a life-maintaining procedure within the meaning of article 4590h, V.T.C.S., whether it will serve to artificially prolong the moment of death is a question which depends upon the expertise of the medical profession for its resolution in each individual case. The article 4399, V.T.C.S., opinion process was not intended to resolve factual disputes.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General