Mr. Gregory L. Coler Secretary, Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32399-00700
Dear Secretary Coler:
You ask substantially the following question:
Does the decision of The Supreme Court of Florida in In re: Guardianship of Browning,[1] prohibit the Department of Health and Rehabilitative Services from regulating nursing home facilities licensed pursuant to Ch. 10D-29, F.A.C., to ensure compliance with the procedural requirements of Browning?
In sum, I am of the opinion that:
While the Department of Health and Rehabilitative Services cannot violate or diminish the patient's right of privacy recognized in In re: Guardianship of Browning, the department is not prohibited from enacting regulations to protect the rights of the nursing home residents and the public health in a manner consistent with the Court's decision. The Browning decision, therefore, does not preclude the department from requiring nursing home facilities, licensed pursuant to Ch. 10D-29, F.A.C., to comply with the procedural requirements of Browning.
In light of the decision of The Florida Supreme Court in In re: Guardianship of Browning,[2] you question whether the department possesses any authority to regulate nursing home facilities regarding the provision of nutrition and hydration.[3] However, since you have not advised this office as to what regulations the department would adopt to ensure such compliance, my comments must be general in nature.
The Supreme Court of Florida in In re: Guardianship of Browning,[4] considered whether the guardian of an incompetent patient who suffered from an incurable but not terminal condition, may exercise the patient's rights of self determination to forego sustenance provided by artificial means.[5] The Court concluded that a person's right of self determination, commonly known as the right of privacy, includes the right to refuse medical treatment.[6] The Court refused to qualify such a right on the basis of the nature of the medical procedure, whether major or minor or whether life-prolonging or life-maintaining. This right, according to the Court, is not diminished by virtue of incapacity but may be exercised by proxies or surrogates.[7]
If the patient has left instructions by way of a declaration regarding health care, the surrogate must abide by the patient's stated decision.[8] Where the patient has left instructions, the patient may, but is not required to, designate, orally or in writing, the decision-maker who is to carry out those instructions. However, when the patient has not expressed instructions but merely delegated full responsibility to a proxy, the designation of the proxy must be in writing.[9]
While the Court's decision clarifies the individual's right of privacy by concluding that the provision of nutrition and hydration by artificial means is included within this constitutional right, I cannot conclude that it necessarily preempts the state from enacting any regulations in this area to protect the rights of nursing home residents. The Court simply acknowledged that such decisions relate to medical treatment and refused to distinguish between this and other types of medical treatment which the patient, or the surrogate or proxy on his or her behalf, may determine to forego.
Nothing in Browning, however, precludes all regulation of nursing homes by the department regarding the provision of sustenance provided such regulations are consistent with the Court's decision. In fact, the Court specifically states that the state has a duty to assure that a person's wishes regarding medical treatment are respected.[10] Obviously, the department cannot violate or diminish the patient's right of privacy; however, this does not mean that the department cannot regulate to protect the public health in a manner consistent with the Court's decision.
Accordingly, while the rules of the department would have to be revised in light of the Browning decision,[11] the department is not, in my opinion, precluded from adopting regulations regarding the provision of nutrition or hydration by artificial means by nursing home facilities provided such regulations are reasonable and do not frustrate or inhibit the patient's exercise of his or her right of self determination to refuse sustenance provided by artificial means.
I am, therefore, of the opinion that the decision of The Supreme Court of Florida in In re: Guardianship of Browning,[12] does not preclude the Department of Health and Rehabilitative Services from adopting rules to ensure compliance with the procedural requirements of the decision of the Court.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] 15 F.L.W. 459 (Fla., filed September 13, 1990).
[2] Id.
[3] You specifically question the continued validity of Rule 10D-29.110(5) and (6), F.A.C., in light of the Court's decision. Subsection (5) was promulgated to deal with incompetent terminally ill residents of a nursing home who, for medical reasons, cannot tolerate artificially forced nutrition or hydration. The rule requires the provision of hydration or nutrition by artificial means if death will result from dehydration or starvation rather than from the underlying terminal illness or injury. Section (6) of the rule provides that a nursing home facility, subject to certain conditions, need not require artificial methods of nutrition or hydration for a resident with a terminal condition where death is imminent when the resident is competent, conscious and makes an informed decision to refuse sustenance.
[4] 15 F.L.W. 459 (Fla., filed September 13, 1990).
[5] The provisions of Ch. 765, F.S., relating to the right to decline life-prolonging procedures, were not applicable to the Browning case since the statute at that time specifically excluded the provision of sustenance from the definition of "Life-prolonging procedure." See, s. 765.03(3), F.S. (1989). The act was amended by the 1990 Legislature to include sustenance within the term "Life-prolonging procedure" provided certain conditions are met. See, Ch. 90-223, Laws of Florida. Thus, the provision of sustenance may be withdrawn where the patient has signed a new living will authorizing the withdrawal of nutrition and hydration and the attending physician and at least one other disinterested physician have each determined that the provision of sustenance is a life-prolonging procedure for the patient and that death is imminent. Chapter 765, F.S., applies when a person is suffering from a terminal condition, defined in s. 765.03(6), F.S., as a "condition caused by injury, disease, or illness from which, to a reasonable degree of medical certainty, there can be no recovery and which makes death imminent."
Sections 11-23, Ch. 90-232, Laws of Florida, provides for the designation of a health care surrogate. The act specifically provides, however, that a health care surrogate may not provide consent for withholding or withdrawing lifeprolonging procedures, unless the patient has made a written declaration authorizing the surrogate to make such decisions pursuant to ss. 765.01-765.15, F.S. Section 17(7), Ch. 90-232, supra. An individual's right to refuse sustenance provided by artificial means as set forth by the Court in Browning, is based on constitutional, not statutory, considerations. While the above statutory provisions are presumptively valid, the right of self determination, including the right to refuse artificially provided sustenance, discussed by the Court arises independent of any statutory enactment.
[6] See, s. 23, Art. I, State Const., which provides in pertinent part that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein." And see, Corbett v. D'Alessandro,487 So.2d 368 (2 D.C.A. Fla., 1986), in which the district court referred to this constitutional provision in authorizing the withholding of sustenance.
[7] In determining whether the patient may recover competency or whether a medical condition or limitation referred to in a patient's declaration regarding health exists, the "surrogate or proxy must obtain, and may rely upon, certificates from the patient's `primary treating physician' and `at least two other physicians with specialities relevant to the patient's condition.'" 15 F.L.W. at 462.
[8] A surrogate, exercising an incompetent patient's right to forego treatment, must:
1) be satisfied that the patient executed any document knowingly, willingly, and without undue influence, and that the evidence of the patient's oral declarations is reliable;
2) be assured that the patient does not have a reasonable probability of recovering competency so that the right could be exercised directly by the patient; and
3) take care that any limitations or conditions expressed either orally or in the written declaration have been carefully considered and satisfied.
15 F.L.W. at 462.
[9] According to the Court, a proxy designated to make the decision without explicit instructions from the patient must:
1) be satisfied that the patient executed the written designation of proxy knowingly, willingly, and without undue influence; and
2) be assured that the patient does not have a reasonable probability of recovering competency so that the right could be exercised directly by the patient.
15 F.L.W. at 642.
[10] 15 F.L.W. at 461.
[11] For example, subsection (5)(d) requiring the provision of hydration or nutrition if, in the opinion of two physicians, death will result from dehydration or starvation rather than the underlying terminal illness or injury would have to be deleted as would the conditions set forth in subparagraphs (5)(c)1. and 2. of the rule. Other revisions or changes in terminology would be necessary to bring the rule in conformity with the principles set forth in Browning.
[12] 15 F.L.W. 459, supra.