792 So.2d 551 (2001)
In re GUARDIANSHIP of Theresa Marie SCHIAVO, Incapacitated.
Robert Schindler and Mary Schindler, Appellants,
v.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellee.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellant,
v.
Robert Schindler and Mary Schindler, Appellees.
Nos. 2D00-1269, 2D01-1836, and 2D01-1891.
District Court of Appeal of Florida, Second District.
July 11, 2001.
*553 Joseph D. Magri of Merkle & Magri, P.A., Tampa, for Appellants/Appellees, Robert Schindler and Mary Schindler.
George J. Felos of Felos & Felos, P.A., Dunedin, for Appellee/Appellant, Michael Schiavo.
ALTENBERND, Judge.
In these three related cases involving the pending guardianship proceeding of Theresa Marie Schiavo, we conclude that a final order entered in a guardianship adversary proceeding, requiring the guardian to discontinue life-prolonging procedures, is the type of order that may be challenged by an interested party at any time prior to the death of the ward on the ground that it is no longer equitable to give prospective application to the order. See Fla. R. Civ. P. 1.540(b)(5). In most, if not all circumstances, the interested party should challenge the final order by a motion for relief from judgment filed in the adversary proceeding in the guardianship. In the rare event that an independent action might be required to challenge such an order under Florida Rule of Civil Procedure 1.540, that independent action must be filed as an adversary proceeding within the guardianship.
*554 At this time, Robert and Mary Schindler, Mrs. Schiavo's parents, have not filed a facially sufficient motion for relief from the order discontinuing life-prolonging procedures. Thus, in appellate case number 2D01-1836, we affirm the guardianship court's denial of the Schindlers' motion for relief from judgment because the motion filed was facially insufficient. On remand, however, we provide the Schindlers with an opportunity to file, if appropriate, a revised motion for relief from judgment pursuant to rule 1.540(b)(5) on the basis that it is no longer equitable that the order should have prospective application. We caution, however, that any proceeding to challenge a final order on this basis is extraordinary and should not be filed merely to delay an order with which an interested party disagrees or to retry an adversary proceeding. The interested party must establish that new circumstances make it no longer equitable to enforce the earlier order. In this case, if the Schindlers believe a valid basis for relief from the order exists, they must plead and prove newly discovered evidence of such a substantial nature that it proves either (1) that Mrs. Schiavo would not have made the decision to withdraw life-prolonging procedures fourteen months earlier when the final order was entered, or (2) that Mrs. Schiavo would make a different decision at this time based on developments subsequent to the earlier court order.
In appellate case number 2D01-1891, we reverse a temporary injunction entered by a judge of the general civil division. That injunction was entered in a separate action filed by the Schindlers against Mr. Schiavo, the ward's husband. The order granting the injunction lacked the necessary findings. Moreover, the pleadings and the evidence supporting the injunction were insufficient. To the extent that this separate action was intended as an independent action seeking relief from the guardianship order pursuant to rule 1.540, that action, and any motion seeking a temporary injunction related to it, must be filed as an adversary proceeding within the guardianship.
Finally, in appellate case number 2D00-1269, the case number for the original appeal of the guardianship court's order authorizing the discontinuation of life-prolonging procedures, we deny the motion to enforce mandate filed by Mr. Schiavo.
As discussed at the end of this opinion, on remand, the guardianship court should make all efforts to expedite these postjudgment challenges.

I. THE FACTS
On February 11, 2000, after Theresa Marie Schiavo had been in a persistent vegetative state for nearly a decade, the guardianship court entered an order pursuant to chapter 765, Florida Statutes (2000), and In re Guardianship of Browning, 568 So.2d 4 (Fla.1990), determining by clear and convincing evidence that Mrs. Schiavo would then elect to cease life-prolonging procedures if she were competent to make her own decision.[1] The guardianship court authorized her husband and legal guardian, Michael Schiavo, to discontinue the life-prolonging procedures. Mrs. Schiavo's parents, Robert and Mary Schindler, were interested parties in the guardianship proceeding and they appealed the order. This court affirmed that decision in January 2001, and denied rehearing on February 22, 2001. In re *555 Guardianship of Schiavo (Schindler v. Schiavo), 780 So.2d 176 (Fla. 2d DCA 2001). The Florida Supreme Court denied review of the case on April 23, 2001. The guardianship court then authorized Michael Schiavo, as guardian, to discontinue the life-prolonging procedures. Those procedures were discontinued on April 24.
Almost as soon as the procedures were discontinued, the Schindlers were informed of new evidence that they believe establishes that their daughter would either not have made that decision fourteen months earlier at the time the original order was entered, or that she would make a different decision at this time. On April 26, 2001, the Schindlers filed a motion for relief from judgment in the guardianship proceeding. That motion alleged that the Schindlers had discovered new evidence in the form of testimony from a new witness. According to the motion, this witness was a former girlfriend of Mr. Schiavo. She allegedly would testify that Mr. Schiavo told her that Mrs. Schiavo and Mr. Schiavo never discussed what Mrs. Schiavo's wishes would be in her present condition. The motion alleged that this testimony was contrary to Mr. Schiavo's testimony at trial, and that it might prove Mr. Schiavo committed perjury in the proceedings. The Schindlers attached two affidavits to the motion. Neither of these affidavits was executed by the witness. Instead, the affidavits were given by Mr. Schindler and by a private investigator hired by Mr. Schindler, and contained hearsay allegations regarding what this potential witness told them.[2]
The guardianship proceeding had been assigned to Judge Greer for several years. He is the judge who heard and evaluated the evidence in the proceeding to discontinue life-prolonging procedures in February 2000. He reviewed the motion for relief from judgment and entered an order denying it. The order denying the motion found that the only two grounds for the motion were intrinsic fraud and newly discovered evidence. The trial court did not reach the merits of this motion, but denied it as untimely, because a motion made upon either of these two grounds must be filed within a year of the entry of the final order or judgment from which relief is sought. See Fla. R. Civ. P. 1.540(b)(2), (3).
After the guardianship court denied this motion, the Schindlers immediately filed a separate action in the general civil division of the circuit court. The "verified complaint" filed in this separate action appears to have been prepared by a lawyer, but it was signed only by Mr. and Mrs. Schindler. Oddly, in the acknowledgment, the notary affirmatively states that the Schindlers did not swear to the facts of the complaint under oath.
In this complaint, the Schindlers attempted to bring suit as the "natural guardians" of Theresa Marie Schiavo, even though they know she is an adult, married daughter with an appointed legal guardian and a pending guardianship proceeding. The complaint initially sued Mr. Schiavo, individually, and did not sue him in his capacity as legal guardian. The complaint alleged that certain actions had been taken by Mr. Schiavo in his care of Mrs. Schiavo. These actions appear to be matters that had been presented at earlier times before Judge Greer. The complaint then alleged that after the entry of Judge Greer's final order in February 2000, the Schindlers had discovered a new witness, Mr. Schiavo's former girlfriend, who would *556 testify that Mr. Schiavo perjured himself during the initial trial when he testified that he and Mrs. Schiavo had discussed her desires regarding extraordinary life-prolonging procedures. According to the complaint, Judge Greer had found Mr. Schiavo's perjured testimony credible and had relied upon it in making a decision within the guardianship proceeding. After briefly setting forth the factual allegations, the last two paragraphs of the complaint alleged, in pertinent part: "Defendant has engaged in an intentional, outrageous, deceptive, and intolerable course of conduct that amounts to perjury and fraud on the court.... This course of conduct has caused the Plaintiffs a decade-long ordeal... and has caused Plaintiffs extraordinary mental anguish, suffering and virtually total disruption of their lives." In the ad damnum clause, the Schindlers demanded "judgment for damages" and requested a jury trial.
Along with the complaint, the Schindlers filed a motion for emergency temporary injunction. This very terse motion, which was signed by an attorney, alleged that Mrs. Schiavo was in imminent danger of death, which death would cause irreparable injury to the Schindlers, and that Mrs. Schiavo should be kept alive until the court could resolve the issues presented in the complaint. The motion sought an order requiring Mr. Schiavo to resume the life-prolonging medical treatments.
Under the standard procedures for assignment of civil cases, this lawsuit was assigned to Judge Quesada. He received the pleading during the afternoon of April 26, 2001. Judge Quesada provided immediate notice to Mr. Schiavo's attorney and convened an emergency hearing at 7:15 p.m. that evening. During that hearing, the trial court permitted the Schindlers to amend their complaint to sue Mr. Schiavo, individually, and as guardian of Theresa Marie Schiavo. Mr. Schiavo moved to transfer these proceedings, particularly as they related to the medical treatment of Mrs. Schiavo, to the guardianship division of the court. The trial court denied this request. The Schindlers presented the two affidavits that had been previously filed in the guardianship court with the motion for relief from judgment. The Schindlers also presented other court documents from the guardianship proceeding and documents from a resolved medical malpractice case brought by Mr. Schiavo on behalf of Mrs. Schiavo several years earlier. No other evidence was presented. At the conclusion of the hearing, the trial court granted the request for an injunction. The order entered by Judge Quesada contains no specific findings, but it required Mr. Schiavo to take the necessary steps to restore life-prolonging procedures to Mrs. Schiavo until further order of the court. Judge Quesada recognized that the facts in the case were still developing, so he stressed that once further discovery had been obtained, Mr. Schiavo could seek dissolution of the injunction.
In response to this injunction, Mr. Schiavo filed an emergency motion with this court to enforce the mandate from our prior opinion affirming the guardianship court's order. This motion sought an order from this court vacating the injunction in the separate civil action filed by the Schindlers, and ruling that no circuit or county judge would have any authority to enter any order under any claim or theory pertaining to the life-prolonging procedures without first obtaining the permission of this court.
This court questioned whether an order enforcing mandate could affect the judge and parties in an action other than the case that had been appealed. Therefore, we issued an order requiring further argument on the motion to enforce mandate. *557 Meanwhile, Mr. Schiavo filed a nonfinal appeal of the temporary injunction in the separate civil action, and the Schindlers filed an appeal of the denial of their rule 1.540 motion in the guardianship proceeding.
This court expedited briefing in all of these matters. In light of the procedural complexities of the matter and the serious due process issues affecting life, we also permitted oral argument on all three cases. We now consolidate these three appellate proceedings solely for the purpose of this opinion.

II. APPEAL NUMBER 2D01-1836

DENIAL OF THE RULE 1.540 MOTION
The Schindlers sought relief from the order of the guardianship court pursuant to rule 1.540 with allegations that suggest that they viewed the legal proceeding as a typical lawsuit in which Mr. Schiavo was the plaintiff and they were the defendants. In this emotionally charged proceeding, they apparently view themselves as the defendants against whom some final judgment has been entered in law. Before this court can determine the application of rule 1.540 to the guardianship order of February 2000, it is necessary to take a more dispassionate view of the proceedings.
After the supreme court's decision in In re Guardianship of Browning, 568 So.2d 4, the legislature wisely revised chapter 765 to better address the issues of life-prolonging treatment. Ch. 92-199, Laws of Fla. The Florida Probate Rules Committee created a new rule to allow rapid resolution of these issues when necessary. See Fla. Prob. R. 5.900. This rule contemplates a quick proceeding in which the trial court approves the decision already reached by the guardian.
In this case, as explained in our earlier opinion, Mr. Schiavo, as guardian, did not file a petition under rule 5.900. Given years of bitter disagreement between the Schindlers and Mr. Schiavo, he filed a petition requesting the trial court to make an independent determination of Mrs. Schiavo's terminal condition and to make the decision to continue or discontinue life-prolonging procedures. See In re Guardianship of Browning, 568 So.2d at 16. Mr. Schiavo, as guardian, requested the court to function as the proxy in light of the dissension within the family.[3] Mr. Schiavo immediately and appropriately asked the trial court to treat the petition as an adversary proceeding pursuant to Florida Probate Rule 5.025.
The Schindlers are not defendants from whom anything was requested in this adversary proceeding. Although it would not appear that they qualified as "next of kin," see § 744.102(12), Fla. Stat. (1997), they were "interested persons" who were entitled to appear in the adversary proceeding and present their viewpoint. See Fla. Prob. R. 5.025(b); § 731.201(21), Fla. Stat. (1997).
When the adversary proceeding concluded, the trial court entered an order authorizing the guardian to discontinue life-prolonging procedures. Although the Schindlers were undoubtedly disappointed by this order, no judgment was entered against them like a judgment is entered against a defendant in a typical civil lawsuit. Because the Schindlers are only "interested parties," it is not clear that they have standing after the appeal to file a motion pursuant to rule 1.540. Because the judgment directly affects the ward *558 only, it is possible that the right to seek postjudgment relief should be limited to the ward's legal guardian. We have found no case addressing this issue, but in this unusual context affecting the ward's due process interest in life, we conclude that interested parties should have standing not directly for themselves but in the interest of the wardto request relief from a judgment of a guardianship court when the final order requires termination of life-prolonging procedures.
The Schindlers' motion for relief from judgment alleged only two grounds, newly discovered evidence and intrinsic fraud. Although not specified in their motion, these grounds request relief under Florida Rule of Civil Procedure 1.540(b)(2) and (b)(3). It has long been well-established that such grounds must be filed within one year of a final order. See Fla. R. Civ. P. 1.540(b) (stating that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken"); Hartley v. Andriuli, 595 So.2d 311 (Fla. 2d DCA 1992); Wescott v. Wescott, 444 So.2d 495 (Fla. 2d DCA 1984); Seven-Up Bottling Co. v. George Constr. Corp. 153 So.2d 11 (Fla. 3d DCA 1963). The Schindlers' motion was filed more than one year after the entry of the final order in the adversary proceeding.
The Schindlers ask this court to hold, for the purposes of rule 1.540, that the one-year period commences upon resolution of any appeal of a final order and not upon entry of the appealed order. This suggested rule is expressly contrary to case law. Seven-Up Bottling Co., 153 So.2d 11; Flemenbaum v. Flemenbaum, 636 So.2d 579 (Fla. 4th DCA 1994). See also Fla. R. Civ. P. 1.540 (author's cmt., 1967) (stating that "[f]iling of an appeal, however, does not toll the one year limitation in which a motion to vacate a judgment must be filed"). The Schindlers rely primarily upon Native Hammock Nursery, Inc. v. E.I. DuPont, 774 So.2d 727 (Fla. 3d DCA 2000). Native Hammock Nursery, however, is distinguishable. It addresses the separate question of when the one-year period commences if a trial court vacates a final judgment and an appellate court thereafter reinstates the judgment. It is doubtful that this court even has the power to rewrite the content of rule 1.540(b) to extend the one-year period in which to challenge a final order based on grounds 1 through 3. We decline to make this change.[4] As a result, the one-year limitation in rule 1.540(b) applies. The guardianship court properly denied the motion because it was untimely on its face.
The discussion at oral argument in this case was fruitful. It caused the court to realize that the parties in this emotional case have overlooked the nature of the order entered on February 11, 2000. Although guardianship law is now predominately statutory, the statutes evolved from the equitable powers of chancery. See 39 Am.Jur.2d Guardian and Ward, § 34, at 37 (1999); SunTrust Bank v. Nichols, 701 So.2d 107 (Fla. 5th DCA 1997). The order *559 requiring the termination of life-prolonging procedures is not a standard legal judgment, but an order in the nature of a mandatory injunction compelling certain actions by the guardian and, indirectly, by the health care providers.[5] Until the life-prolonging procedures are discontinued, such an order is entirely executory, and the ward and guardian continue to be under the jurisdiction and supervision of the guardianship court. As long as the ward is alive, the order is subject to recall and is executory in nature.
Rule 1.540(b)(5) has long permitted a party to challenge a judgment without time limitation if "it is no longer equitable that the judgment or decree should have prospective application." In order to preserve the finality of judgments, this ground has been rather narrowly construed. See Hensel v. Hensel, 276 So.2d 227 (Fla. 2d DCA 1973).[6] This ground was modeled after Federal Rule of Civil Procedure 60(b)(5). In federal cases, it has been applied specifically to mandatory injunctions, consent decrees, and other ongoing or executory judgments. DeWeerth v. Baldinger, 38 F.3d 1266 (2d Cir.1994). See also Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1 (1st Cir.2001); Evans v. Williams, 206 F.3d 1292 (D.C.Cir.2000). We conclude that this ground should apply to an order of a guardianship court that requires the termination of life-prolonging procedures.
Like federal rule 60(b)(5), this rule provides "extraordinary relief" reserved for "exceptional circumstances"; it requires the trial judge to strike the "delicate balance" between the sanctity of final judgments and the need for ongoing or executory equitable remedies to remain equitable. See Zang, 248 F.3d at 5; Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C.Cir.1988). This ground does not allow a party to retry a case merely because the judgment provides equitable relief and the party has found additional evidence. Instead, the *560 rule requires the movant to establish that significant new evidence or substantial changes in circumstances arising after the entry of the judgment make it "no longer equitable" for the trial court to enforce its earlier order.
Hypothetically, in a case involving life-prolonging procedures, if the ward's condition dramatically and unexpectedly improved after trial, it might no longer be equitable to conclude that the ward was in a terminal condition, see § 765.101(17), Fla. Stat. (2000), or that the ward would have exercised her informed consent to withdraw the life-prolonging procedures. Likewise, if an interested party discovered the ward's advance directive[7] or her written designation of a health care surrogate[8] hidden in a desk after the trial, and it conflicted with the court's judgment, that might be grounds for relief from the prospective nature of the judgment. Certainly, if medical research suddenly discovered a complete cure for what had previously been thought to be a terminal condition as defined in section 765.101(17), Florida Statutes (2000), we would treat that new circumstance as a matter warranting relief from such a judgment.
However, at this time, the Schindlers have not seriously contested the fact that Mrs. Schiavo's brain has suffered major, permanent damage. In the initial adversary proceeding, a board-certified neurologist who had reviewed a CAT scan of Mrs. Schiavo's brain and an EEG testified that most, if not all, of Mrs. Schiavo's cerebral cortexthe portion of her brain that allows for human cognition and memory  is either totally destroyed or damaged beyond repair. Her condition is legally a "terminal condition." § 765.101(17), Fla. Stat. (2000). Although it is conceivable that extraordinary treatment might improve some of the motor functions of her brain stem or cerebellum, the Schindlers have presented no medical evidence suggesting that any new treatment could restore to Mrs. Schiavo a level of function within the cerebral cortex that would allow her to understand her perceptions of sight and sound or to communicate or respond cognitively to those perceptions.
The new information the Schindlers provided to the guardianship court in the hearsay affidavits supporting their motion for relief from judgment is not as forceful as the evidence described in our hypothetical scenarios.[9] The affidavits concern alleged statements by Mr. Schiavo several years ago. We note that the guardianship court's original order expressly relied upon and found credible the testimony of witnesses other than Mr. Schiavo or the Schindlers. We recognize that Mrs. Schiavo's earlier oral statements were important evidence when deciding whether she would choose in February 2000 to withdraw life-prolonging procedures. See § 765.401(3), Fla. Stat. (2000); In re Guardianship of Browning, 568 So.2d 4, 16. Nevertheless, the trial judge, acting as her proxy, also properly considered evidence of Mrs. Schiavo's values, personality, and her own decision-making process.
This case is not the usual case in which a proxy makes a decision about life-prolonging procedures. Often, the decision to discontinue *561 such procedures is made within weeks or months from the time the ward is competent to make such a decision. Often the ward has lived to such an age that he or she has had ample opportunity to reflect upon and discuss these issues of mortality. In this case, the proxy had to make a decision for a woman in her mid-thirties when she had not been competent since her mid-twenties. It would be unrealistic to expect the proxy to pretend that the ward was not aging and remained twenty-five. The proxy had to use the best available evidence to ascertain the decision that Theresa Marie Schiavo would have made in February 2000 if she had remained competent to assess her own terminal condition and make her own informed decision. We are confident that the guardianship court understood this difficult task when it made its decision in February 2000.
Thus, although we conclude that the Schindlers have the right to seek relief from judgment under rule 1.540(b)(5) for the benefit of the ward, we caution that any such motion must allege new circumstances affecting the decision made by the trial judge as the ward's proxy in February 2000, and those circumstances must make it no longer equitable for the trial court to enforce its earlier decision.
A motion for relief from judgment does not operate to stay a judgment. Fla. R. Civ. P. 1.540(b) (stating that "[a] motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation"). Under the unique circumstances of this case, however, we direct the guardianship court to refrain from any attempt to enforce its original order until Monday, July 23, 2001, to give the Schindlers an opportunity to file a facially sufficient motion pursuant to Florida Rule of Civil Procedure 1.540(b)(5).[10] The Schindlers are authorized to file such a motion in the guardianship proceedings on or before the regular close of court on Friday, July 20, 2001. The trial court shall exercise its own judgment and discretion concerning the resolution of any such motion. See Cutler Ridge Corp. v. Green Springs, Inc., 249 So.2d 91 (Fla. 3d DCA 1971).
To avoid any confusion arising from the various proceedings since April of this year, the trial court shall issue an order that either expressly enforces its earlier order or vacates it. If the trial court elects to enforce its earlier order, it should enter an order informing all interested parties of the day and time that the guardian must instruct the health care providers to discontinue life-prolonging procedures.

III. APPEAL NUMBER 2D01-1891

THE TEMPORARY INJUNCTION
Judge Quesada was given an unenviable task in this case. Late in the day he received an emergency motion involving the life of a young woman. The pleadings were poorly drafted and the affidavits were little better. He did not have the benefit of any case law squarely addressing the issues presented to him. None of the lawyers involved in the hearing had had adequate time to prepare and reflect upon these difficult issues. We cannot fault him for wanting to enter some type of stay order to give himself and the parties the opportunity to review this matter in a more deliberate fashion. However, the record presented on that day was insufficient to support the entry of a temporary injunction, and the temporary injunction *562 order entered is deficient in its content. Moreover, we conclude that any action challenging the final order of the guardianship court must be filed as an adversary proceeding within the guardianship. In light of our ruling permitting an interested party to file a motion under rule 1.540(b)(5), we doubt that an independent action is necessary in this matter.
The action filed by the Schindlers in the general civil division did not actually state a cause of action for an "independent action" as that term is used in rule 1.540. An independent action is filed to "relieve a party from a judgment." See Fla. R. Civ. P. 1.540(b). At least under the circumstances in this case, such an independent action must allege an extrinsic fraud upon the court. See DeClaire v. Yohanan, 453 So.2d 375 (Fla.1984); Winston v. Winston, 684 So.2d 315 (Fla. 4th DCA 1996). The fraud must be alleged with specificity. See Fla. R. Civ. P. 1.120(b); Daugharty v. Daugharty, 456 So.2d 1271, 1274 (Fla. 1st DCA 1984) (noting rule of specificity is even more important in independent action). The action filed by the Schindlers sought monetary damages from Mr. Schiavo in his individual capacity. It failed to state a cause of action that would allow anyoneparticularly on behalf of the wardto obtain relief from the judgment of the guardianship court.[11]
The Schindlers' motion for a temporary injunction and the evidence they presented to support it was also deficient. In order to be entitled to a temporary injunction, a movant must establish four elements, including a substantial likelihood of success on the merits of the case. Duryea v. Slater, 677 So.2d 79 (Fla. 2d DCA 1996). The trial court abused its discretion in determining that the content of this record established this element, particularly when the complaint itself did not appear to state a valid cause of action. Moreover, an order granting a temporary injunction must contain clear, definite, and unequivocal findings to support the four elements required for entry of an injunction. Snibbe v. Napoleonic Soc'y of Am., 682 So.2d 568 (Fla. 2d DCA 1996). This order contains no such findings. Accordingly, we reverse the temporary injunction.
We conclude that any independent action seeking relief from the order entered in the guardianship proceeding, or any effort to obtain an injunction contrary to the guardianship court's order, must be filed as an adversary proceeding within that guardianship. As we explained earlier in this opinion, the Schindlers take this action as interested parties for the benefit of the ward. Given that the guardianship is still pending and that the guardianship court has continuing jurisdiction over the ward, it is simply inconceivable that another circuit judge can or should be given the power to override an order entered in the pending guardianship. As a general rule, one trial court judge does not have the *563 power to review the final order of another trial judge. See Groover v. Walker, 88 So.2d 312 (Fla.1956); Davis v. Fisher, 391 So.2d 810 (Fla. 5th DCA 1980). Although the independent action allowed by DeClaire, 453 So.2d 375, may occasionally be an exception to this general rule, when the initial action involves a guardianship that is still pending and that court has not lost jurisdiction over the ward, we see no basis to allow a deviation from the general rule. Thus, although Judge Quesada had jurisdiction to initially consider the merits of the pleadings placed before him, upon learning of the pending guardianship proceedings, he was compelled to transfer any independent action for relief from the guardianship order and any request for temporary injunction related to the guardianship order to the guardianship court for resolution.
It is unclear to this court whether the Schindlers maintain that they can now allege in good faith a fraud upon the court as required for an independent action by DeClaire. If they wish to plead such a fraud with the necessary specificity, that action should be filed in the guardianship court within the same period that this court has provided for the filing of a motion pursuant to rule 1.540(b)(5). The filing of such an action will not stay the February 11, 2000, order. To stay the earlier final order, the Schindlers would need to apply for, and prove entitlement to, a temporary injunction in the guardianship court.
Because we have permitted the Schindlers time to file a new independent action in the guardianship proceedings, to the extent that the complaint filed before Judge Quesada seeks this relief, that portion of the complaint should be dismissed. Our scope of review in this case does not include the question of whether the complaint filed before Judge Quesada states a cause of action for money damages against Mr. Schiavo personally. Thus, that portion of the complaint is not affected by this appeal and remains pending in the general civil division.

IV. CASE NUMBER 2D00-1269

MOTION TO ENFORCE MANDATE
It is extremely rare for a trial court or a trial lawyer to disobey the order of an appellate court when the matter returns to the trial court after the appellate court issues its mandate. In those rare cases where compliance is an issue, a motion to enforce mandate can be filed in the appellate court. See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 328 So.2d 825 (Fla.1975). We can at least envision the possibility of a situation in which an appellate court might issue an order on a motion to enforce mandate that was directed to someone other than a party to the appeal or a judge or court clerk involved in that proceeding on remand in the trial court. Such an order, which would be similar to a contempt order, should be rarely, if ever, issued.
In this case, Judge Greer has not disobeyed this court's mandate. Because we conclude that the Schindlers have standing to file motions or proceedings pursuant to rule 1.540(b) to challenge the February 2000 order, that action does not violate our mandate. At this point, we are unwilling to conclude that the filing of any such motion would be so baseless or frivolous as to constitute a violation of our mandate. The merits of the motion or action are better left to the trial court that actually made the factual determinations supporting the February 11, 2000, order. Accordingly, the motion to enforce mandate and any pending amendment to that motion is denied.

*564 V. FUTURE APPELLATE REVIEW
This court recognizes that if the Schindlers file a renewed motion or independent action seeking relief from the guardianship order, an order resolving that motion or action is appealable. An order by the guardianship court granting or denying a temporary injunction would also be subject to appeal. This court is very aware that the postjudgment proceedings and the appellate process could delay implementation of an order for many months. Accordingly, we encourage the guardianship court to resolve this matter with all deliberate speed. We will expedite any appeal of a future order in this case. Moreover, if the guardianship court enters an order that is appealed, and the guardianship court is confident in its own decision and is convinced that an appeal is sought merely to delay its order, the guardianship court can use its discretion in determining whether to grant or deny a stay pending the appeal. This court would review the grant or denial of a stay on an expedited basis. See Fla. R.App. P. 9.310(f).
Because we have not consolidated these appeals, any motion for rehearing concerning this opinion should be filed in the specific appellate case. We elect to expedite the rehearing process. Thus, any motion for rehearing must be filed and delivered to opposing counsel before the regular close of court on July 16, 2001. Any response to such a motion for rehearing must be filed before the regular close of court on July 18, 2001. The filing of such a motion will not stay or automatically extend the period set forth in this opinion within which a motion or independent action must be filed to seek relief from the guardianship order.
Despite all of the published opinions and public interest in this case, it should not be overlooked that the courts in this case are attempting to honor Theresa Marie Schiavo's constitutional right of privacy as it affects her medical decisions. See In re Guardianship of Browning, 568 So.2d 4. The judicial process must be sufficient to assure the accuracy of the proxy's decision, but not so slow as to deprive the ward of a final decisionone way or the other.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
BLUE, C.J., and PARKER, J., Concur.
NOTES
[1] "Life-prolonging procedure" is a statutorily defined term. See § 765.101(10), Fla. Stat. (2000). It includes the methods to provide sustenance and hydration that are involved in this case.
[2] Technically, the notary stated in each affidavit that the witness "acknowledged" the "foregoing instrument." The notary did not use the normal language "sworn to or affirmed and signed before me."
[3] By statute, both Mr. Schiavo and the Schindlers could serve as the proxy for this decision, but Mr. Schiavo had priority. See § 765.401(1), Fla. Stat. (1997).
[4] We have considered whether a limited exception to the one-year limitation should apply in a guardianship context. In the context of a guardianship, the trial court never loses jurisdiction over the ward, and the proceeding remains pending in the circuit court. In contrast, in a typical civil action, the trial court loses jurisdiction at some point after the entry of the final judgment. Nevertheless, an adversary proceeding within the guardianship is comparable to any other lawsuit. See Fla. Prob. R. 5.025(d). It has a beginning and an end that is separate from the overall guardianship proceeding. We are concerned that a rule that eliminated the one-year restriction for final orders in such adversary proceedings could cause more mischief than merit.
[5] The final order of February 11, 2000, stated that it "authorized" the guardian "to proceed with the discontinuance of said artificial life support for Theresa Marie Schiavo." At oral argument in these cases, the parties recognized that despite the somewhat permissive nature of this language, the trial court was not actually giving the guardian discretion on whether to discontinue the life-prolonging procedures. The guardian was obligated to obey the circuit court's decision and discontinue the treatment. Because the order was appealable, the trial court simply did not specify the date and time for this mandated action.
[6] In many cases, courts have determined the rule to be inapplicable. See, e.g., State, Dep't of Health & Rehab. Servs. v. Wright, 498 So.2d 1008 (Fla. 2d DCA 1986) (refusing to apply rule where basis for motion was potential defense to underlying action; rule contemplates equities arising after final judgment); Gregory v. Connor, 591 So.2d 974 (Fla. 5th DCA 1991) (same); Ellis Nat'l Bank v. Davis, 379 So.2d 1310 (Fla. 1st DCA 1980) (affirming denial of rule 1.540 motion when issue could and should have been raised as affirmative defense, particularly when underlying action is not injunctive in nature); Gimbel v. Int'l Mailing & Printing Co., 505 So.2d 631 (Fla. 4th DCA 1987) (affirming denial of rule 1.540 motion when trial court had previously considered same arguments during merits of trial and rejected them); Curtiss-Wright Corp. v. Diaz, 507 So.2d 1197 (Fla. 3d DCA 1987) (holding that money judgments do not have "prospective application" necessary to invoke relief under this rule); Am. Fire & Cas. Co. v. Dawson, 400 So.2d 849 (Fla. 2d DCA 1981) (same); Pollock v. T & M Invs., Inc., 420 So.2d 99 (Fla. 3d DCA 1982) (affirming denial of rule 1.540 motion; although rule 1.540 is to be liberally construed to effect relief from an unjust judgment, this relief is available only in extraordinary circumstances); Cutler Ridge Corp. v. Green Springs, Inc., 249 So.2d 91 (Fla. 3d DCA 1971) (same).
[7] See § 765.101(1), Fla. Stat. (2000).
[8] See § 765.203, Fla. Stat. (2000).
[9] The deposition of the witness referred to in the affidavits was taken after these appeals were filed. Although Mr. Schiavo has filed a copy of that deposition with this court as part of his motion to enforce mandate, for the purposes of this specific appeal the court concludes that it should consider only the information available at the time the guardianship court denied the motion for relief from judgment.
[10] To avoid any confusion, we expressly give jurisdiction to the guardianship court to consider either a motion filed pursuant to Florida Rule of Civil Procedure 1.540(b)(5) or an independent action for relief from the order prior to the issuance of any mandate by this court.
[11] We do not need to decide whether the complaint stated a cause of action for intentional infliction of emotional distress entitling the Schindlers to damages from Mr. Schiavo. Such a complaint must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." See Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla.1985) (quoting Restatement (Second) of Torts § 46 (1965)). We note that parents generally have no common law or statutory right to recover damages for pain and suffering, grief, or emotional loss in the event that their married, adult daughter is the victim of a wrongful death. See § 768.21(4), Fla. Stat. (2000). As a result, it is questionable whether they would be able to establish entitlement to those same types of damages in an action for infliction of emotional distress.