915 So.2d 717 (2005)
DEPARTMENT OF REVENUE, o/b/o Sabrina STEPHENS, Appellant,
v.
Robert L. BOSWELL, Appellee.
No. 5D05-1023.
District Court of Appeal of Florida, Fifth District.
December 2, 2005.
*718 Charles J. Crist, Jr., Attorney General, and William H. Branch, Assistant Attorney General, Tallahassee, for Appellant.
No Appearance for Appellee.
GRIFFIN, J.
The Florida Department of Revenue, on behalf of Sabrina Stephens ["the Department"], appeals an order setting aside a final judgment of paternity and reducing child support arrearages to zero.[1] We reverse.
On January 3, 1991, Robert L. Boswell ["Boswell"] stipulated to a final judgment of paternity for RB, who was born on December 1, 1989. Boswell admitted that he was the biological father of the child and agreed to pay child support, as well as a public assistance debt due the State of *719 Florida. A final judgment to this effect was entered by the trial court on January 28, 1991.
Three years later, in a letter to the court dated July 18, 1994, Boswell questioned the child's paternity, but took no other action. On November 16, 2001, when the child was almost twelve years old, Boswell filed a motion for scientific paternity testing. The sole basis for the request was that:
At this time, other than testimony, very little or no substantial proof of paternity or nonpaternity is available in this action.
He again took no action on this motion, but on July 8, 2002, Boswell filed a copy of a DNA test indicating a zero probability that he was the father of RB.
On August 13, 2002, Boswell finally filed a pro se motion for termination of child support. The motion attached the paternity test and sought: (1) termination of Boswell's ongoing child support obligation, (2) establishment of the amount of arrearages due, if any, and (3) establishment (if needed) of a schedule for payment of arrearages. After receipt of a report from a guardian ad litem appointed by the court, the case was set for hearing. On August 2, 2004, the court denied the motion to terminate Boswell's ongoing child support obligation, but stated that it would review the record to determine the proper arrearages, if any.
On September 17, 2004, Boswell again filed a motion to terminate child support. This motion was virtually identical to the earlier motion which had been filed and denied on August 2, 2004. The court held a hearing on the motion on October 25, 2004. The court's order stated in a section entitled "Comments":
DNA testing ordered through DOR, if alleged father is not the father support is to be terminated.
The mother later objected by letter to this ruling, on the basis that she had not been notified of the hearing on the September petition. The letter was returned to the mother, indicating that no action could be taken through correspondence.
On January 12, 2005, Boswell, again acting pro se, filed a new document simply entitled "Motion", which asked for:
1.) DISCHARGE OF ANY DOCUMENTS FILED WITH RESPONDENTS (sic) SIGNATURE. (STIP / BC).
2.) TERMINATION OF CHILD SUPORT/ PARENTAL OBLIGATIONS.
3.) FULL RESTITUTION FOR CHILD SUPPORT PAID COMPENSATED BY THE STATE.
4.) RETURN FEES FROM PATERNITY TEST CONDUCTED APRIL 22, 2002.
The motion stated that the court should grant the request because:
1.) THE DISHONESTY, FRAUDULENT CONDUCT, AND FALSE STATEMENTS SUBMITTED TO THE COURTS BY MS. STEPHENS BROUGHT HARDSHIP AMONGST ME AND MY FAMILY.
2.) MISREPRESENTATION BY HRS, MISSTATING FACTS TO OBTAIN A SIGNATURE FROM THE RESPONDENT WHEN CASE ORIGINATED IN JANUARY OF 1991.
3.) VIOLATION OF THE FIFTH AMENDMENT BY THE DEPARTMENT OF REVENUE.
The court held a hearing on Boswell's motion on February 3, 2005. At the hearing, the mother testified that at the time paternity was established in 1991, she believed that Boswell was the biological father of the child. She said she did not know that Boswell was not the biological *720 father until the paternity test results were issued. The mother also testified the father is the only father the child has known. Boswell testified that the mother "fraudulently induced" him into believing he was the biological father by telling him he was the biological father, causing him to voluntarily sign the stipulation of paternity in 1991.
Despite objections by the Department's counsel, the court entered an order setting aside the final judgment of paternity, explaining:
The DOR objected to the motion being heard as issue of paternity was res judicata and that there were no pleadings or testimony alleging extrinsic fraud. The Court overruled the DOR's objection and found that the DNA test results previously admitted into evidence showed 0% probability of paternity, thus excluding the respondent as the biological father of the child and that as a matter of equity the final judgment of paternity should be set aside and all child support arrears of record should be reduced to zero.
The Department contends that entry of this order was error for several reasons: (1) the petition alleged, at most, intrinsic fraud (e.g. perjury or misrepresentation) on the part of the mother; (2) a motion to vacate the final judgment on the basis of intrinsic fraud had to filed within one year of entry of the final judgment; and (3) because the motion in the instant case was filed more than one year after entry of the final judgment, the trial court was without jurisdiction to vacate the final judgment. The Department acknowledges that an independent action to vacate the final judgment can be filed more than one year after entry of the final judgment if based on extrinsic fraud, but this was not done and, in any event, the motion was not based on extrinsic fraud. The Department acknowledges that the judgment was vacated "as a matter of equity," but argues that this was impermissible, as this was never plead as a basis of relief by Boswell and, in any event, the evidence that Boswell was not the child's father was not an equity arising after entry of the final judgment that would permit its vacation.
Rule 1.540(b) of the Florida Rules of Civil Procedure sets forth the grounds upon a final judgment can be vacated. The right to vacate a final judgment on the basis of fraud or misrepresentation is controlled by Rule 1.540(b)(3), which provides that a motion to vacate a judgment for fraud, whether based on extrinsic or intrinsic fraud, must be filed within a year of entry of the final judgment. Under the requirements of the rule, Boswell's motion was untimely.
Even if an independent action had been instituted, there was no basis for vacating the final judgment. Under the rule, an independent action to vacate a final judgment must be based on "extrinsic fraud," otherwise known as "fraud upon the court." The Florida Supreme Court has explained that "extrinsic" fraud is defined as:
the prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.
DeClaire v. Yohanan, 453 So.2d 375, 377 (Fla.1984), citing Fair v. Tampa Electric Co., 158 Fla. 15, 27 So.2d 514, 515 (1946). Extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause. Id. "Intrinsic" fraud is *721 "fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried." Id.
The motion in this case was based on intrinsic fraud, as it involved allegations of perjury or misrepresentation. Department of Revenue v. Speights, 864 So.2d 73 (Fla. 1st DCA 2003) (knowing misrepresentation made by mother in connection with sworn complaint to establish paternity was at most intrinsic fraud); Zuckerman v. Alex Hofrichter, P.A., 630 So.2d 210 (Fla. 3d DCA 1993) (misrepresentation is intrinsic fraud); Streater v. Stamper, 466 So.2d 397 (Fla. 1st DCA 1985) (perjury committed in connection with paternity judgment was intrinsic fraud). See also Department of Revenue v. Harris, 684 So.2d 231 (Fla. 2d DCA 1996); DeVaughn v. Department of Revenue, 691 So.2d 11 (Fla. 4th DCA 1997).
Possibly recognizing this jurisdictional difficulty, the findings of the trial court suggest that it vacated the final judgment on the basis of Florida Rule of Civil Procedure 1.540(b)(5):
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order or proceeding for the following reasons: ....
(5) that the judgment or decree has been satisfied, released or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application.

Id. (emphasis added).
The Department correctly argues that the trial court was not entitled to vacate the final judgment on grounds not raised in the motion, and, in any event, subsection five has no application here. As the court explained in In re Guardianship of Schiavo, 792 So.2d 551 (Fla. 2d DCA 2001), Rule 1.540(b)(5) has been "narrowly construed" in order to preserve the finality of judgments. Id. at 558. The provision, which was modeled after Federal Rule of Civil Procedure 60(b)(5), was intended to provide "extraordinary relief" reserved for "exceptional circumstances." Id. at 559. It does not "allow a party to retry a case merely because the judgment provides equitable relief and the party has found additional evidence." Id. Instead, "the rule requires the movant to establish that significant new evidence or substantial changes in circumstances arising after the entry of the judgment make it `no longer equitable' for the trial court to enforce its earlier order.'" Id. at 559-560. The Schiavo court gave the following hypotheticals as examples of the types of situations in which the rule could be applied, in the context of that case, where a judgment had been issued ordering a guardian to discontinue life-prolonging procedures for a ward:
Hypothetically, in a case involving life-prolonging procedures, if the ward's condition dramatically and unexpectedly improved after trial, it might no longer be equitable to conclude that the ward was in a terminal condition, see § 765.101(17), Fla. Stat. (2000), or that the ward would have exercised her informed consent to withdraw the life-prolonging procedures. Likewise, if an interested party discovered the ward's advance directive or her written designation of a health care surrogate hidden in a desk after the trial, and it conflicted with the court's judgment, that might be grounds for relief from the prospective nature of the judgment. Certainly, if medical research suddenly discovered a complete cure for what had previously been thought to be a terminal condition as defined in section *722 765.101(17), Florida Statutes (2000), we would treat that new circumstance as a matter warranting relief from such a judgment.
Id. at 560.
There is little case law on the subject, but the Second District has held that matters which could have been raised as a defense to the original action do not qualify for relief under Rule 1.540(b)(5). See Department of Health and Rehab. Servs. v. Wright, 498 So.2d 1008 (Fla. 2d DCA 1986) (denying husband's request to set aside a final judgment of dissolution that required him to pay child support when he claimed, for the first time, that he was not the child's biological father). This interpretation of category (5) of Rule 1.540(b) is supported by the structure of the rule and is the only interpretation that gives effect to all the rule's provisions. The circumstances addressed in category (5) all appear to address matters arising after the judgment, not circumstances present before the judgment. If a category (5) "equity" included any of the categories contained in Rule 1.540(b)(3), the other categories would be meaningless and superfluous. What would be the point of a one-year limit on fraud if a mere inequity can be the basis for relief from a judgment at any time? Indeed, Boswell never offered any evidence that the mother did commit a fraud. How could "equity" offer greater protection to someone who merely failed to exercise his rights than to the victim of a fraud?
We acknowledge that the Third District Court of Appeal and the Second District, in a different case, have approved an order granting relief on "equitable" grounds under seemingly analogous circumstances. In Florida Department of Revenue v. M.L.S., 756 So.2d 125 (Fla. 2d DCA 2000), the court affirmed an order granting relief under category five of Rule 1.540(b) where a putative father had signed the birth certificate of a child born out of wedlock and had been ordered to pay child support, but a later DNA test showed that he was not the biological father of the child. The order in M.L.S. was entered eleven years after entry of the original order requiring the putative father to pay child support.[2] Similarly, in State v. Lodge, 890 So.2d 255 (Fla. 3d DCA 2004), the Third District Court affirmed an order terminating child support in a paternity case, noting that the facts were similar to those involved in M.L.S., except that in the Lodge case, the child had already reached the age of majority. In M.L.S. and in Lodge, however, unlike this case, res judicata was not available to protect the original judgment because the orders in question required the putative father to pay child support but did not expressly adjudicate paternity. 756 So.2d at 126. In this case, paternity was expressly adjudicated.
Judge Altenbernd dissented from M.L.S. on numerous grounds, one of which was that the motion did not allege a proper basis for relief under Rule 1.540(b)(5). For this proposition, he cited Wright, as holding that matters which could have been raised as a defense to the original action do not qualify for relief under Rule 1.540(b)(5). He continued that even if the motion had alleged a proper basis for relief under Rule 1.540(b)(5):
the "no longer equitable" ground in that rule should not permit a judge to deprive this child of a support father and leave her with little or no hope of ever tracking down a biological father to sue for paternity. M.L.S.'s own delay and *723 acquiescence in this whole matter has allowed I.S. to have a father/daughter relationship with him for years. I fail to see the equity in depriving this teenager a paternal support under the circumstances of this case, when M.L.S. was given a chance in 1986 to contest his status as a legal father.
M.L.S., 756 So.2d at 131-132. We agree with Judge Altenbernd's contention that "equity" is not available to deprive a child of parental support based on facts that could easily have been determined prior to entry of the stipulated judgment of paternity. In addition, the M.L.S. court noted that the child in the case before it had been illegitimate since birth, because the issue of paternity had not been litigated, so that the case did not implicate the rights recognized in Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305, 307 (Fla.1993) (once child is born legitimate, she has a right to maintain that status both factually and legally if doing so is in her best interest).
In this case, the final judgment did declare Boswell to be the child's biological father, based on his express stipulation, and specifically ordered the Department of Vital Statistics to issue an amended birth certified declaring Boswell to be the "legal father." This judgment is entitled to res judicata effect. Boswell, like any other litigant, had the opportunity to contest paternity in 1991 before entry of the final judgment, and he had the full range of remedies under Rule 1.540(b) available to him had he exercised them timely. If Boswell were fraudulently induced to stipulate to paternity, the issue had to be raised within the time allowed under Rule 1.540(b) to undo the judgment. The "no longer equitable" ground is not available to undo the judgment as a matter of law, and even if it were, the facts do not establish an equity in Boswell's favor.
REVERSED.
THOMPSON and ORFINGER, JJ., concur.
NOTES
[1] Appellee, Robert L. Boswell, has not appeared in this appeal.
[2] M.L.S. was apparently predicated on Daniel v. Daniel, 695 So.2d 1253 (Fla.1997), which held that a "legal father" may not challenge the legitimacy of a child later determined not to be his own, but he cannot be required to support such a child.