800 So.2d 640 (2001)
In re GUARDIANSHIP OF Theresa Marie SCHIAVO, Incapacitated.
Robert Schindler and Mary Schindler, Appellants,
v.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellee.
No. 2D01-3626.
District Court of Appeal of Florida, Second District.
October 17, 2001.
Rehearing Denied November 1 and November 7, 2001.
*641 Patricia Fields Anderson, St. Petersburg, and Lawrence D. Crow, Tarpon Springs, for Appellants.
George J. Felos of Felos & Felos, P.A., Dunedin, for Appellee.
ALTENBERND, Judge.
This is the third opinion issued by this court addressing a bitter dispute among the members of Mrs. Theresa Schiavo's family over her medical condition and her right to forego life-prolonging medical procedures. See In re Guardianship of Schiavo (Schindler v. Schiavo), 780 So.2d 176 (Fla. 2d DCA 2001) ("Schiavo I"); In re Guardianship of Schiavo (Schindler v. Schiavo), 792 So.2d 551 (Fla. 2d DCA 2001) ("Schiavo II"). Our last opinion instructed the guardianship court to permit Mrs. Schiavo's parents, Robert and Mary Schindler, to file a motion for relief from judgment. We attempted to limit the nature of the grounds upon which relief could be granted. Following our opinion, the trial court summarily denied the Schindlers' newly filed motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540(b)(5). We have reviewed the trial court's order in conjunction with our last opinion. We acknowledge that our opinion misled the trial court. Accordingly, we are compelled to reverse a portion of the trial court's decision in this case.
We conclude that the Schindlers' motion for relief from judgment and the supporting affidavits state a "colorable entitlement" to relief concerning the issue of whether Mrs. Schiavo might elect to pursue *642 a new medical treatment before withdrawing life-prolonging procedures. See Dynasty Express Corp. v. Weiss, 675 So.2d 235, 239 (Fla. 4th DCA 1996); S. Bell Tel. & Tel. Co. v. Welden, 483 So.2d 487, 489 (Fla. 1st DCA 1986). This "colorable entitlement" requires the trial court to permit certain limited discovery and conduct an evidentiary hearing to determine whether this new evidence calls into question the trial court's earlier decision that Mrs. Schiavo would elect to cease life-prolonging procedures if she were competent to make her own decision. We emphasize that we are requiring an evidentiary hearing only to resolve the motion for relief from judgment; this opinion does not require a new trial.

I. PROCEDURAL HISTORY OF THIS CASE
In Schiavo I, we affirmed the trial court's decision ordering Mrs. Schiavo's guardian to withdraw life-prolonging procedures. Schiavo I, 780 So.2d 176 (Fla. 2d DCA), cert. denied, 789 So.2d 348 (Fla. 2001) (table). In so doing, we affirmed the trial court's rulings that (1) Mrs. Schiavo's medical condition was the type of endstage condition that permits the withdrawal of life-prolonging procedures,[1] (2) she did not have a reasonable medical probability of recovering capacity so that she could make her own decision to maintain or withdraw life-prolonging procedures,[2] (3) the trial court had the authority to make such a decision when a conflict within the family prevented a qualified person from effectively exercising the responsibilities of a proxy,[3] and (4) clear and convincing evidence at the time of trial supported a determination that Mrs. Schiavo would have chosen in February 2000 to withdraw the life-prolonging procedures.
After our first opinion, the Schindlers began a multipronged attack upon the trial court's final judgment. That attack included filing a motion in the guardianship court seeking relief from the judgment pursuant to rule 1.540(b)(2) and (3), based upon allegations of newly discovered evidence and intrinsic fraud, and filing a separate complaint in the civil division of the circuit court seeking to challenge the final judgment of the guardianship court. On July 11, 2001, this court held that the guardianship court had appropriately denied the 1.540 motion as untimely on its face but that the Schindlers, who are technically "interested parties" in this proceeding, had standing to file either a motion for relief from judgment under rule 1.540(b)(5) or an independent action in the guardianship court to challenge the judgment on the grounds that it is no longer equitable that the judgment should have prospective application. Schiavo II, 792 So.2d 551. This court reversed an injunction entered in the case pending before the civil division of the circuit court and noted that any independent action seeking to challenge the guardianship court's judgment must be filed in the guardianship court. We remanded the case and provided the Schindlers with a limited time in which to file either proceeding in the guardianship court.
On remand, the Schindlers filed a timely motion for relief from judgment pursuant to rule 1.540(b)(5).[4] In addition to the *643 motion for relief from judgment, the Schindlers filed a "Petition for Independent Medical Examination," a petition for removal of guardian, and a motion to disqualify Judge Greer. The trial court denied the petition for removal of guardian and the motion to disqualify. We affirm those decisions without further discussion. The trial court also summarily denied the motion for relief from judgment and the "petition" for an independent medical examination. These are the decisions we review at greater length in this opinion.

II. THE AMENDED MOTION FOR RELIEF FROM JUDGMENT
The Schindlers contend in their amended motion for relief from judgment that it is no longer equitable for the judgment permitting the withdrawal of life-prolonging measures to have prospective application for two reasons. First, in May 2001, the Schindlers discovered three new witnesses whose proffered testimony is primarily impeachment evidence of the testimony of Mr. Schiavo at the original trial before the guardianship court. Two of these witnesses were close female friends of Mr. Schiavo during a period ending in approximately 1993. The third witness was the husband of one of these women. The Schindlers filed lengthy depositions from the husband and wife, and a lengthy affidavit from the second woman. The Schindlers maintained that this new evidence was sufficient to change the trial court's determination that, in February 2000, Mrs. Schiavo would have chosen to withdraw life-prolonging procedures.
This aspect of the Schindlers' motion asked the guardianship court to assess the impact of new sworn testimony on an issue that was fully litigated in the initial trial before the guardianship court.[5] In that initial proceeding, the parties debated at length whether Mrs. Schiavo had ever expressed her opinions on life-prolonging procedures and whether the court could determine her wishes. Both sides presented conflicting evidence directed specifically to this issue. The trial court has reviewed the affidavits and depositions of these new witnesses and has assessed the potential impact of this new evidence upon the evidence and testimony that the court considered at the initial trial. We have also reviewed this evidence and conclude that the trial court committed no reversible error in determining that this new evidence failed to present a colorable claim for entitlement to relief from the judgment. See Graham v. Eisele, 245 So.2d 682, 683 (Fla. 3d DCA 1971); cf. E.I. DuPont De Nemours & Co. v. Native Hammock Nursery, Inc., 698 So.2d 267 (Fla. 3d DCA 1997) (addressing newly discovered evidence under rule 1.530).
As a second reason for relief from judgment, the Schindlers argued that Mrs. Schiavo's medical condition in February 2000 was misrepresented to the trial court and to this court throughout these proceedings. They claim that she is not in a persistent vegetative state. What is more important, they maintain that current accepted medical treatment exists to restore her ability to eat and speak. The initial *644 trial focused on what Mrs. Schiavo would have decided given her current medical condition and not on whether any available medical treatment could improve her condition. The Schindlers argue that in light of this new evidence of additional medical procedures intended to improve her condition, Mrs. Schiavo would now elect to undergo new treatment and would reverse the prior decision to withdraw life-prolonging procedures.
In support of these arguments, the Schindlers filed numerous affidavits from licensed physicians who have reviewed Mrs. Schiavo's medical records, who have considered affidavits providing anecdotal evidence from lay people about her condition, and who have watched a brief videotape of her interaction with her mother at a time close to the original trial. Mr. Schiavo, as the ward's guardian, has not permitted these doctors to physically examine Mrs. Schiavo or conduct any diagnostic tests.
The affidavits of the several doctors vary in content and rhetoric. Among the affidavits filed by the Schindlers, however, the most significant evidence comes from Dr. Fred Webber. Dr. Webber is an osteopathic physician practicing in Clearwater, Florida, who claims that Mrs. Schiavo is not in a persistent vegetative state and that she exhibits "purposeful reaction to her environment." He swore under oath as follows:
Within the past year, I have treated patients with brain defects similar to Mrs. Schiavo's. In most cases, using cardiovascular medication style of therapy, my patients have shown some improvement, although the degree of that improvement is variable. By "improvement" I mean cognitive and physical items such as speech recovery, enhanced speech clarity and complexity, release of contractures, and better awareness of the patient's surroundings. In my opinion and judgment, based on my 26 years of practice, Mrs. Schiavo has a good opportunity to show some degree of improvement if treated with this type of therapy, although I cannot anticipate how much improvement.
Purely from a lay perspective, this court must express skepticism concerning Dr. Webber's affidavit. Nevertheless, when a doctor claims under oath that he may be able to restore Mrs. Schiavo's ability to speak and otherwise restore her cognitive function, and when numerous doctors dispute the diagnosis of persistent vegetative state based on the records available to them, it is difficult for judges untrained in any medical specialty to summarily reject their opinions without additional evidence.
In our last opinion, we suggested that a medical improvement might need to rise to the level of a "complete cure" before the trial court would be required to conduct an additional evidentiary hearing. Schiavo II, 792 So.2d at 560. We described extreme hypothetical examples in our opinion to demonstrate that circumstances could exist where all would agree that the trial court should grant relief under rule 1.540(b)(5). We conclude that our examples misled the trial court into believing that only those types of allegations would suffice, and we apologize for the confusion we created.
A motion for relief from judgment should not be summarily dismissed without an evidentiary hearing unless its allegations and accompanying affidavits fail to allege "colorable entitlement" to relief. See Dynasty Express, 675 So.2d at 239; Welden, 483 So.2d at 489. We doubt that any court has previously been called upon to determine what allegations of new medical treatment are sufficient to create a colorable entitlement in this context. The parties agree that we should review de *645 novo the trial court's decision to summarily deny the portion of the motion based on the claim of new medical treatment.
Of the four issues resolved in the original trial, which are described earlier in this opinion, we conclude that the motion establishes a colorable entitlement only as to the fourth issue. As to that issuewhether there was clear and convincing evidence to support the determination that Mrs. Schiavo would choose to withdraw the life-prolonging proceduresthe motion for relief from judgment alleges evidence of a new treatment that could dramatically improve Mrs. Schiavo's condition and allow her to have cognitive function to the level of speech. In our last opinion we stated that the Schindlers had "presented no medical evidence suggesting that any new treatment could restore to Mrs. Schiavo a level of function within the cerebral cortex that would allow her to understand her perceptions of sight and sound or to communicate or respond cognitively to those perceptions." Schiavo II, 792 So.2d at 560. Although we have expressed some lay skepticism about the new affidavits, the Schindlers now have presented some evidence, in the form of the affidavit of Dr. Webber, of such a potential new treatment.
This court has repeatedly stated that, in cases of termination of life-support, the courts must assume that a patient would choose to defend life in exercising the right of privacy. See Schiavo I, 780 So.2d at 179; In re Guardianship of Browning, 543 So.2d 258, 273 (Fla. 2d DCA 1989). This default position requires this court to conclude that the medical affidavits are sufficient to create a colorable entitlement to relief sufficient to warrant an evidentiary hearing on the motion for relief from judgment. We therefore reverse the summary denial of this portion of the motion and remand to the trial court to conduct an evidentiary hearing on these specific claims.
As we view the unusual and difficult posture of this case, the question before the trial court in the evidentiary hearing on remand is whether this new evidence concerning additional medical treatment is sufficient to establish that the current final judgment is no longer equitable. There is federal case law indicating that a proponent of a motion for relief from judgment based upon Federal Rule of Civil Procedure 60(b)(5), upon which rule 1.540(b)(5) is modeled, must prove entitlement by clear and convincing evidence. Stokors v. Morrison, 147 F.3d 759, 761 (8th Cir.1998). Nevertheless, the initial burden of proof in this case required clear and convincing evidence of Mrs. Schiavo's wishes, and this case involves the withdrawal of life-prolonging procedures. Under these circumstances, we conclude that the Schindlers, as the proponents of the motion, must prove only by a preponderance of the evidence that the initial judgment is no longer equitable. To meet this burden, they must establish that new treatment offers sufficient promise of increased cognitive function in Mrs. Schiavo's cerebral cortex-significantly improving the quality of Mrs. Schiavo's lifeso that she herself would elect to undergo this treatment and would reverse the prior decision to withdraw life-prolonging procedures.

III. PROCEEDINGS ON REMAND
Although the court's obligation to make this decision arises from Mrs. Schiavo's constitutional right of privacy, the fact that a state trial court must make this life-and-death decision unfortunately necessitates a very public airing of her constitutionally protected privacy rights. The open proceedings are essential to assure that the public understands the legitimacy of this *646 process. In this regard, we conclude that the Schindlers' petition for an independent medical examination should be treated as a request for discovery within this proceeding. We conclude that the trial court should grant this request within very specific confines.
In their motion, the Schindlers have presented the affidavits of seven doctors. Of these doctors, only Dr. Webber has gone so far as to suggest that available treatment could restore cognitive function to Mrs. Schiavo. Because this claim raises the motion to the level of colorable entitlement requiring an evidentiary hearing, the Schindlers will need to present similar evidence at the hearing to support their claim for relief from the judgment. Recognizing that the opinions of the remaining doctors may have been limited by their inability to examine Mrs. Schiavo or obtain necessary diagnostic information, we do not restrict the Schindlers to presenting only the testimony of Dr. Webber. Rather, the Schindlers may choose two doctors to participate in discovery and present their opinions at an evidentiary hearing. In addition, to control the scope of this hearing and to prevent the proverbial "war of experts," Mr. Schiavo may introduce in rebuttal the testimony of two doctors of his choosing.[6]
In order to obtain the best available medical evaluation and because at least one of the Schindlers' experts in his affidavit has accused the treating physicians of malpractice, we further conclude that the trial court should appoint a new independent physician to examine and evaluate Mrs. Schiavo's current condition. This physician should not be one of the doctors who has already provided testimony or an affidavit in this case and should be independent of those physicians and without any prior involvement with this family. If possible, this new physician should be very experienced in the treatment of brain damage and in the diagnosis and treatment of persistent vegetative state. This new physician should be board-certified in neurology or neurosurgery. We instruct lead counsel in the trial court for both parties to locate and agree upon the selection of this new physician. In the event that counsel are unable to stipulate to the selection of a new physician for the purposes of this independent examination, the trial court shall make the selection.
Once the Schindlers and Mr. Schiavo have each designated their two physicians and the independent physician has been selected, the physicians shall have the opportunity to examine Mrs. Schiavo. The court shall authorize the expenditure and payment of the reasonable fees of the independent physician appointed by the court and all reasonable diagnostic tests.[7] We anticipate that the physicians will want to obtain current EEG readings as well as brain scans performed using current technology. They may need to obtain diagnostic results from the tests typically given at a general physical. In the event that the doctors disagree upon the necessary tests or the guardian objects to a test on grounds that it may be too invasive or harmful to Mrs. Schiavo, the trial court *647 will need to resolve the dispute.[8] We recommend to the trial court that all five designated physicians file written reports with the trial court, and that the court then schedule an evidentiary hearing to resolve this matter.
We emphasize that the trial court is obligated to permit discovery and conduct an evidentiary hearing only for the purpose of assessing Mrs. Schiavo's current medical condition, the nature of the new medical treatments described in the affidavits and their acceptance in the relevant scientific community, the probable efficacy of these new treatments, and any other factor that the trial court itself determines to be necessary for it to decide whether this evidence calls into question the initial judgment.[9] We urge the trial court to conduct this discovery and hearing as expeditiously as possible and without undue delay. To this end, the trial court may wish to set an immediate case management conference. That conference could result in an order incorporating the requirements of this opinion and mandating compliance with the procedures established by this court and the trial court.
After the evidentiary hearing is held, if the trial court grants relief, it will vacate the judgment. It may then set a new trial or enter any appropriate new order. If the trial court denies the motion, it will once again need to enter an order scheduling the withdrawal of life-support in accordance with the instructions that this court provided in Schiavo II, 792 So.2d at 561.
We fully recognize that the discovery process and the hearing that we have outlined will require extensive cooperation among attorneys whose clients are engaged in a bitter dispute. The enmity of clients does not dispense with the need for professionalism among lawyers; it heightens that need. In the final analysis, the courts must and will make the necessary decisions for Mrs. Schiavo. Professionalism among the lawyers involved is the best guaranty that the court will make sound decisions. The lawyers involved in this case have already demonstrated such professionalism during this appeal. We are confident they can rise to the occasion and demonstrate the professionalism necessary to resolve this matter in the trial court without undue delay and with the care and dignity that we all owe to Mrs. Schiavo.
Affirmed in part, reversed in part, and remanded.
BLUE, C.J., and PARKER, J., Concur.
NOTES
[1] See § 765.101(4), Fla. Stat. (2000).
[2] See § 765.305(2)(a), Fla. Stat. (2000).
[3] See § 765.401, Fla. Stat. (2000).
[4] The Schindlers did not file an independent action in the guardianship court. In In re Guardianship of Schiavo (Schindler v. Schiavo), 792 So.2d 551 (Fla. 2d DCA 2001) ("Schiavo II"), we noted that the complaint filed in the civil division of the circuit court did not state a cause of action for an independent action for relief from judgment. Id. at 554. While Schiavo II was pending on appeal, the relevant counts of that complaint were transferred to the guardianship court. Because the Schindlers have now elected to seek relief by way of a motion pursuant to Florida Rule of Civil Procedure 1.540(b)(5) and have not sought to amend this fatally deficient complaint to state a cause of action for an independent action, we doubt that this stray pleading has any practical significance.
[5] We assume without deciding that such allegation could be sufficient to obtain relief under rule 1.540(b)(5).
[6] Although it may be sensible for both sides to select physicians who are already involved in this case, we are not restricting them to such physicians.
[7] The trial court will need to address the propriety of paying for the remaining physicians from the guardianship funds. At oral argument, counsel for the Schindlers represented that the doctors who submitted affidavits on their behalf were so incensed by the circumstances of the case that they had agreed to provide their expert professional services at no charge.
[8] We emphasize again that we are authorizing diagnostic tests, not treatment.
[9] To allow for this conference and to avoid further delay, we relinquish jurisdiction to the trial court at this time to commence the proceedings authorized by section III of this opinion. We do not alter the standard times for rehearing and issuance of mandate in this case.