814 So.2d 454 (2001)
Burt KRONER, Appellant,
v.
SINGER ASSET FINANCE COMPANY, L.L.C., Appellee.
No. 4D01-883.
District Court of Appeal of Florida, Fourth District.
November 21, 2001.
Tracy S. Carlin and John A. Tucker of Foley & Lardner, Jacksonville, and Mark A. Salzberg, West Palm Beach, for appellant.
Mark F. Bideau and Lorie Gleim of Greenberg, Traurig, P.A., West Palm Beach, for appellee.
WARNER, J.
Appellant moved for relief from a final judgment entered pursuant to a settlement in which he had agreed to an injunction prohibiting his participation in the business of buying lottery winner awards. He claimed that appellee was no longer in that business itself, and thus, the injunction was both illegal as a restraint on trade and inequitable. Because we conclude that appellant did not set forth a prima facie case to justify relief, we affirm.
Appellant, Kroner, was a pioneer in the lottery buy-out business, which specializes in buying lottery prizes from winners who desire an immediate lump sum cash payment. The winner's stream of income is bought and pooled with others, and the cash flow is resold to institutional investors. Kroner sold half of the assets of his company to Enhance Financial Services *455 Group, Inc. ("EFS"). Together, they cofounded appellee, Singer Asset Finance Company, which continued the lottery buy-out business. As part of the transaction, Kroner executed an employment agreement and a covenant not to compete. After Singer enjoyed continuing success, Kroner sold his remaining interest in 1998 and left the company. When he opened a competing business, he filed a suit for declaratory relief because the parties disagreed over the terms of the non-compete agreement. That suit resulted in a settlement agreement, which was incorporated in a final judgment, and provided that for a period of five years Kroner was enjoined from directly or indirectly engaging in the business of providing cash to winners of state lottery prizes and from managing, joining, advising, consulting or performing any service for any business, individual, or entity engaged in the business of providing cash to winners of state lottery prizes.
After the final judgment, Singer's fortunes changed. Eventually, because of mounting competition, including some from Kroner's new business, Singer decided to cease new sales and focus on its existing deals. According to affidavits filed by Singer, it "outsourced" new sales to a new company that had the right to use its name. Singer would continue to receive royalties based upon the new company's sales.
When Kroner called Singer's listed phone numbers in the end of December, 2000, he heard a message directing him to call another business's number if he wished to establish new business. That same month, Kroner filed a motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540(b)(5), alleging Singer was no longer in the restricted business, and the injunction was inequitable and an illegal restraint of trade which did not have a legitimate business interest to protect. In support of the motion, Kroner filed EFS's SEC filing which stated that it was "finalizing a plan to wind down, sell or otherwise dispose of the Singer ... business activities, operations and assets while meeting Singer's ... servicing and financial obligations." He also attested to the telephone call he made to Singer's business indicating that new business should contact a different number.
In response, Singer filed several affidavits in which it explained that Kroner had continued to violate the injunction by not only working with Singer's main competitor but setting up other businesses through which Kroner continued in the lottery prize buying business. The affidavits also stated that Singer still employed about thirty people and collected and accounted for many millions of dollars in cash prizes which were pooled and sold to institutional investors. It further stated that the sale of its name to the company which was now purchasing the lottery prizes included a provision entitling the purchaser to direct Singer to enforce its right in any non-compete agreements.
At the hearing, Singer argued that Kroner had failed to meet the heavy burden required to modify a final judgment entered as a result of a settlement agreement, where Singer had released valuable damage claims as part of the settlement. Further, if Kroner were entitled to relief, then Singer also should be entitled to relief from the release given pursuant to the settlement, so that Singer could pursue its damages claims. While no requests for discovery were made prior to the hearing, Kroner requested the opportunity to take discovery if the court believed that any factual issues existed relative to Singer's sale of its business interests. The trial court denied the motion and ordered that *456 the agreed final judgment should continue to be enforced.
Rule 1.540(b) provides:
On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: ... (5) that the judgment or decree has been satisfied, released, or discharged ... or it is no longer equitable that the judgment or decree should have prospective application.
A trial court has broad discretion in determining whether to grant relief from a judgment. See Rosso v. Golden Surf Towers Condo. Ass'n, 711 So.2d 1298, 1300 (Fla. 4th DCA 1998); Schwab & Co., Inc. v. Breezy Bay, Inc., 360 So.2d 117, 118 (Fla. 3d DCA 1978). Likewise, we review orders of the trial court on such motions for abuse of discretion. See Bakalarz v. Luskin, 560 So.2d 283, 285 (Fla. 4th DCA 1990); Schwab & Co., 360 So.2d at 118 ("there must be a showing of a gross abuse of discretion"). That should be particularly true for motions grounded on the general "inequity" of a final judgment's prospective application.
There are two reasons why we conclude that the trial court did not abuse its discretion. First, Kroner's affidavits do not establish that Singer was, at the time, completely out of the lottery buy-out business. Second, the non-competition agreement was part of an agreed final judgment where Singer gave up valuable claims. For both of these reasons, the trial court did not abuse its discretion in refusing to grant relief on the ground that it is no longer equitable that the judgment should have prospective application.
At best, Kroner's affidavits show that Singer may be out of the business, but even the SEC filing statement indicates that some activities will continue. Singer's affidavits indicate that it continues to service existing accounts, even though it has "outsourced" the acquisition of new business. We think the trial court could conclude that prospective application of a stipulated judgment may continue.
More importantly, the non-competition agreement was first part of the sale of a business, for which Kroner was paid a substantial sum of money. It was then incorporated into a final judgment by which Singer gave up valuable monetary claims for breach of that agreement in return for an enforceable injunction restraining Kroner's participation in the restricted business. In Herndon v. Eli Witt Co., 420 So.2d 920, 923 (Fla. 1st DCA 1982), the court held that despite the apparent facial invalidity of a covenant not to compete entered into after the termination of employment, such a covenant would be enforced when ancillary to a valid settlement agreement supported by valuable consideration and settlement of a lawsuit.
Here, Singer had forgone pursuing claims of monetary damage by agreeing to accept the non-competition agreement from Kroner, settling a lawsuit. Thus, to relieve Kroner of the burden imposed on him in the agreed final judgment would not be equitable without also relieving Singer of the release of its damages claims, thus unsettling the entire underlying lawsuit. Because Kroner's motion does not make a prima facie case for the equity of such a result, we find no abuse of the trial court's broad discretion in denying the motion.
We affirm all other issues raised.
GUNTHER, J., and STREITFELD, JEFFREY E., Associate Judge, concur.