851 So.2d 182 (2003)
In re GUARDIANSHIP OF Theresa Marie SCHIAVO, Incapacitated.
Robert Schindler and Mary Schindler, Appellants,
v.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellee.
No. 2D02-5394.
District Court of Appeal of Florida, Second District.
June 6, 2003.
Rehearing Denied July 9, 2003.
Patricia Fields Anderson, St. Petersburg, for Appellants.
George J. Felos of Felos & Felos, P.A., Dunedin, for Appellee.
Jan G. Halisky, Clearwater, for Amicus Curiae Professionals for Excellence in Health Care, Inc.
Rita L. Marker, Steubenville, Ohio; and James S. Ganther, Tampa, for Amicus Curiae International Task Force on Euthanasia and Assisted Suicide.
Christopher A. Ferrara, Ramsey, New Jersey, for Amicus Curiae American Catholic Lawyers Association.
Max Lapertosa and Kenneth M. Walden, Chicago, Illinois; and George K. Rahdert of Rahdert, Steele, Bryan & Bole, P.A., St. Petersburg, for Amici Curiae Not Dead Yet, Adapt, American Association of People With Disabilities, Center for Self-Determination, Center on Human Policy at Syracuse University, The Reverend Rus Cooper-Dowda, Disability Rights Education and Defense Fund, Half the Planet Foundation, Hospice Patients' Alliance, Dr. James Hall, National Council on Independent Living, National Spinal Cord Injury Association, Self-Advocates Becoming Empowered, Tash, World Association of Persons With Disabilities, and World Institute on Disability.
*183 ALTENBERND, Chief Judge.
Robert and Mary Schindler appeal the guardianship court's order denying their motion for relief from a judgment that ordered their daughter's guardian to withdraw life-prolonging procedures. We have carefully reviewed all aspects of the record on appeal. We conclude that the guardianship court complied with the instructions provided by this court in its last opinion. The guardianship court did not abuse its discretion in denying the motion for relief from judgment. Its ruling is supported by competent, substantial evidence and accords with the law of this state. Accordingly, we affirm the order on appeal.[1]

I.
This is the fourth time that this court has reviewed an order from the guardianship court in this controversy. Schindler v. Schiavo (In re Guardianship of Schiavo), 780 So.2d 176 (Fla. 2d DCA 2001) (Schiavo I); Schindler v. Schiavo (In re Guardianship of Schiavo), 792 So.2d 551 (Fla. 2d DCA 2001) (Schiavo II); Schindler v. Schiavo (In re Guardianship of Schiavo), 800 So.2d 640 (Fla. 2d DCA 2001) (Schiavo III). This case has a long and difficult history, which we will not detail in this opinion. As we explained in our last opinion, Schiavo III:
In Schiavo I, we affirmed the trial court's decision ordering Mrs. Schiavo's guardian to withdraw life-prolonging procedures. Schiavo I, 780 So.2d 176 (Fla. 2d DCA), cert. denied, 789 So.2d 348 (Fla.2001) (table). In so doing, we affirmed the trial court's rulings that (1) Mrs. Schiavo's medical condition was the type of end-stage condition that permits the withdrawal of life-prolonging procedures, (2) she did not have a reasonable medical probability of recovering capacity so that she could make her own decision to maintain or withdraw life-prolonging procedures, (3) the trial court had the authority to make such a decision when a conflict within the family prevented a qualified person from effectively exercising the responsibilities of a proxy, and (4) clear and convincing evidence at the time of trial supported a determination that Mrs. Schiavo would have chosen in February 2000 to withdraw the life-prolonging procedures.
800 So.2d at 642 (footnotes omitted).
Schiavo III involved a motion filed pursuant to Florida Rule of Civil Procedure 1.540 seeking relief from the original judgment after it had been affirmed in Schiavo I. In Schiavo III, we held that the guardianship court must conduct an evidentiary hearing on the motion, limited to the fourth issue. We stated:
Of the four issues resolved in the original trial ..., we conclude that the motion establishes a colorable entitlement only as to the fourth issue. As to that issuewhether there was clear and convincing *184 evidence to support the determination that Mrs. Schiavo would choose to withdraw the life-prolonging proceduresthe motion for relief from judgment alleges evidence of a new treatment that could dramatically improve Mrs. Schiavo's condition and allow her to have cognitive function to the level of speech. In our last opinion we stated that the Schindlers had "presented no medical evidence suggesting that any new treatment could restore to Mrs. Schiavo a level of function within the cerebral cortex that would allow her to understand her perceptions of sight and sound or to communicate or respond cognitively to those perceptions." Schiavo II, 792 So.2d at 560. Although we have expressed some lay skepticism about the new affidavits, the Schindlers now have presented some evidence, in the form of the affidavit of Dr. [Fred] Webber, of such a potential new treatment.
Schiavo III, 800 So.2d at 645.
On remand, we permitted the parents to present evidence to establish by a preponderance of the evidence that the judgment was no longer equitable. We specifically held:
To meet this burden, they must establish that new treatment offers sufficient promise of increased cognitive function in Mrs. Schiavo's cerebral cortexsignificantly improving the quality of Mrs. Schiavo's lifeso that she herself would elect to undergo this treatment and would reverse the prior decision to withdraw life-prolonging procedures.
Schiavo III, 800 So.2d at 645.
In order to minimize disputes between the parties, this court's last opinion also provided guidance to the guardianship court concerning the nature of the hearing to be held on remand. We required an additional set of medical examinations of Theresa Schiavo and the selection of no more than five physicians to provide expert testimony on the issue presented. We instructed that one of the five physicians must be a new, independent physician selected either by the agreement of the parties or, if they could not agree, by the appointment of the guardianship court. We indicated that this physician should be board certified in neurology or neurosurgery, with expertise if possible "in the treatment of brain damage and in the diagnosis and treatment of persistent vegetative state." 800 So.2d at 646.
On remand, this court anticipated but did not require that Dr. Webber, who had claimed in his affidavit that he might be able to restore Mrs. Schiavo's speech and some of her cognitive functioning, would testify for the parents and provide scientific support for his claim. However, Dr. Webber, who was so critical in this court's decision to remand the case, made no further appearance in these proceedings.
Instead, the parents provided testimony from Dr. William Maxfield, a board-certified physician in radiology and nuclear medicine, and Dr. William Hammesfahr, a board-certified neurologist. Michael Schiavo, Mrs. Schiavo's husband and guardian, selected Dr. Ronald Cranford and Dr. Melvin Greer, both board-certified neurologists, to testify. The fifth physician, selected by the guardianship court when the parties could not agree, was Dr. Peter Bambakidis, a board-certified neurologist practicing in the Department of Neurology at the Cleveland Clinic Foundation in Cleveland, Ohio. He is a clinical professor of neurology at Case Western Reserve University. His credentials fulfilled the requirements of our prior opinion.
Through the assistance of Mrs. Schiavo's treating physician, Dr. Victor Gambone, the physicians obtained current *185 medical information about Theresa Schiavo including high-quality brain scans. Each physician reviewed her medical records and personally conducted a neurological examination of Mrs. Schiavo. Lengthy videotapes of some of the medical examinations were created and introduced into evidence. Thus, the quality of the evidence presented to the guardianship court was very high, and each side had ample opportunity to present detailed medical evidence, all of which was subjected to thorough cross-examination. It is likely that no guardianship court has ever received as much high-quality medical evidence in such a proceeding.
On the issue that caused this court to reverse in our last decision, whether new treatment exists which offers such promise of increased cognitive function in Mrs. Schiavo's cerebral cortex that she herself would elect to undergo this treatment and would reverse the prior decision to withdraw life-prolonging procedures, the parents presented little testimony. Dr. William Hammesfahr claimed that vasodilation therapy and hyberbaric therapy "could help her improve." He could not testify that any "specific function" would improve. He did not claim that he could restore her cognitive functions. He admitted that vasodilation therapy and hyberbaric therapy were intended to increase blood and oxygen supply to damaged brain tissue to facilitate repair of such tissue. These therapies cannot replace dead tissue. Although the physicians are not in complete agreement concerning the extent of Mrs. Schiavo's brain damage, they all agree that the brain scans show extensive permanent damage to her brain. The only debate between the doctors is whether she has a small amount of isolated living tissue in her cerebral cortex or whether she has no living tissue in her cerebral cortex.
The evidentiary hearing held on remand actually focused on an issue that was not the issue we anticipated would be the primary issue on remand. The parents contended that Mrs. Schiavo was not in a persistent or permanent vegetative state. Both Dr. Maxfield and Dr. Hammesfahr opined that she was not in such a state. They based their opinions primarily upon their assessment of Mrs. Schiavo's actions or responses to a few brief stimuli, primarily involving physical and verbal contact with her mother. The three other physicians all testified that Mrs. Schiavo was in a permanent or persistent vegetative state. The guardianship court was most impressed with the testimony of Dr. Bambakidis, who concluded that Mrs. Schiavo remained in a permanent vegetative state.
The guardianship court determined that Mrs. Schiavo remained in a permanent vegetative state. The guardianship court concluded that there was no evidence of a treatment in existence that offered such promise of increased cognitive function in Mrs. Schiavo's cerebral cortex that she herself would elect to undergo it at this time. Having concluded that the parents had failed to meet their burden to establish, by a preponderance of evidence, that the judgment was no longer equitable, the guardianship court denied the motion for relief from judgment and rescheduled the removal of the hydration and nutrition tube. In re Guardianship of Schiavo (Schiavo v. Schindler), Case No. 90-2908-GB-003, 2002 WL 31817960 (Fla. 6th Jud. Cir.Ct. Nov. 22, 2002). When the parents appealed that order, the guardianship court stayed the removal of the nutrition and hydration tube pending review by this court.

II.
We are not reviewing a final judgment in this appellate proceeding. The final *186 judgment was entered several years ago and has already been affirmed by this court. The Florida Supreme Court declined to review this case. See, e.g., Schindler v. Schiavo, 789 So.2d 348 (Fla.2001) (unpublished table decision). Today, our review is limited to an order denying a motion for relief from judgment.
A trial court has broad discretion in determining whether to grant relief from a judgment. Kroner v. Singer Asset Fin. Co., 814 So.2d 454, 456 (Fla. 4th DCA 2001). An appellate court reviews that decision to determine whether the trial court abused its discretion. Id. (noting that this should be particularly true for motions grounded on general "inequity" of final judgment's prospective application). Indeed, some cases suggest that an appellate court cannot reverse such an order absent a showing of a gross abuse of discretion. LPP Mortgage Ltd. v. Bank of Am., N.A., 826 So.2d 462, 463-64 (Fla. 3d DCA 2002); Tilden Groves Holding Corp. v. Orlando/ Orange County Expressway, 816 So.2d 658 (Fla. 5th DCA 2002); see also Emmer v. Brucato, 813 So.2d 264, 265 n. 1 (Fla. 5th DCA 2002) (expressing confusion as to difference between "gross abuse of discretion" and "abuse of discretion"). In this case, the guardianship court followed the instructions in our last decision. It conducted a thorough hearing and prepared an extensive order. We cannot conclude that the guardianship court abused its discretion when it denied the motion.
The Schindlers have urged this court to conduct a de novo review of the evidence in this case, primarily because of the finality of this decision for their daughter. The guardianship court heard live testimony from many physicians. When it reviewed the videotapes of Mrs. Schiavo and the diagnostic tests and brain scans, it did so with the assistance and expertise of those physicians. This court can review the evidence in the record with only its training in the law and its lay experience. It is simply not proper for this court to review such a fact-intensive determination using a de novo standard.
Despite our decision that the appropriate standard of review is abuse of discretion, this court has closely examined all of the evidence in this record. We have repeatedly examined the videotapes, not merely watching short segments but carefully observing the tapes in their entirety. We have examined the brain scans with the eyes of educated laypersons and considered the explanations provided by the doctors in the transcripts. We have concluded that, if we were called upon to review the guardianship court's decision de novo, we would still affirm it.
The judges on this panel are called upon to make a collective, objective decision concerning a question of law. Each of us, however, has our own family, our own loved ones, our own children. From our review of the videotapes of Mrs. Schiavo, despite the irrefutable evidence that her cerebral cortex has sustained the most severe of irreparable injuries, we understand why a parent who had raised and nurtured a child from conception would hold out hope that some level of cognitive function remained. If Mrs. Schiavo were our own daughter, we could not but hold to such a faith.
But in the end, this case is not about the aspirations that loving parents have for their children. It is about Theresa Schiavo's right to make her own decision, independent of her parents and independent of her husband. In circumstances such as these, when families cannot agree, the law has opened the doors of the circuit courts to permit trial judges to serve as surrogates or proxies to make decisions about life-prolonging procedures. See In re *187 Guardianship of Browning, 568 So.2d 4 (Fla.1990) (affirming In re Guardianship of Browning, 543 So.2d 258, 273-74 (Fla. 2d DCA 1989)); see also § 765.401(3), Fla. Stat. (2000). It is the trial judge's duty not to make the decision that the judge would make for himself or herself or for a loved one. Instead, the trial judge must make a decision that the clear and convincing evidence shows the ward would have made for herself. § 765.401(3). It is a thankless task, and one to be undertaken with care, objectivity, and a cautious legal standard designed to promote the value of life. But it is also a necessary function if all people are to be entitled to a personalized decision about life-prolonging procedures independent of the subjective and conflicting assessments of their friends and relatives. It may be unfortunate that when families cannot agree, the best forum we can offer for this private, personal decision is a public courtroom and the best decision-maker we can provide is a judge with no prior knowledge of the ward, but the law currently provides no better solution that adequately protects the interests of promoting the value of life. We have previously affirmed the guardianship court's decision in this regard, and we now affirm the denial of a motion for relief from that judgment.
At the conclusion of our first opinion, we stated:
In the final analysis, the difficult question that faced the trial court was whether Theresa Marie Schindler Schiavo, not after a few weeks in a coma, but after ten years in a persistent vegetative state that has robbed her of most of her cerebrum and all but the most instinctive of neurological functions, with no hope of a medical cure but with sufficient money and strength of body to live indefinitely, would choose to continue the constant nursing care and the supporting tubes in hopes that a miracle would somehow recreate her missing brain tissue, or whether she would wish to permit a natural death process to take its course and for her family members and loved ones to be free to continue their lives. After due consideration, we conclude that the trial judge had clear and convincing evidence to answer this question as he did.
Schiavo I, 780 So.2d at 180. Nothing in these proceedings has changed this conclusion. The extensive additional medical testimony in this record only confirms once again the guardianship court's initial decision.
On remand, following the issuance of our mandate, the guardianship court should schedule another hearing solely for the purpose of entering a new order scheduling the removal of the nutrition and hydration tube.
Affirmed.
FULMER and STRINGER, JJ., concur.
NOTES
[1] The initial notice of appeal filed by the Schindlers also sought appellate review of an order denying an "emergency motion to hold ruling in abeyance pending development of additional medical evidence." The initial brief filed by the Schindlers, however, did not raise this as a specific legal issue on appeal, except to argue that the denial of the motion evinced an alleged partiality on the part of the trial judge. Even if this issue had been raised and argued, we would not reverse. The guardianship court did not err by refusing to stay this matter to allow the parents to investigate allegations irrelevant to the specific issue presented to it and resolved by its order. Similarly, the Schindlers argue in their brief that the assets of Mrs. Schiavo's guardianship estate have been wasted. This was not a subject of the hearing below. There is no order on appeal to which these arguments are relevant. The outcome of this appeal has no bearing on any claims as to the handling of the financial aspects of the guardianship estate.