916 So.2d 814 (2005)
In re GUARDIANSHIP OF Theresa Marie SCHIAVO, Incapacitated.
Robert T. Schindler and Mary Schindler, Appellants,
v.
Michael Schiavo, as Guardian of the person of Theresa Marie Schiavo, Appellee.
No. 2D05-968.
District Court of Appeal of Florida, Second District.
March 16, 2005.
David C. Gibbs, III, of Gibbs Law Firm, P.A., Seminole, for Appellants.
George J. Felos of Felos & Felos, P.A., Dunedin, for Appellee.
ALTENBERND, Chief Judge.
Robert and Mary Schindler, the parents of Theresa Marie Schiavo, appeal the trial court's order denying their motion for relief from judgment filed pursuant to Florida Rule of Civil Procedure 1.540(b)(4). This case has an extensive legal history,[1] *815 and this is not the first motion that the Schindlers have filed seeking relief from the trial court's judgment.
The judgment was entered by the trial court in February 2000 following an extensive trial. The trial court determined, based on clear and convincing evidence, that Theresa Schiavo was in a persistent vegetative state and that she herself would elect to forego further use of a feeding tube. This court affirmed that judgment. See In re Guardianship of Schiavo, 780 So.2d 176 (Fla. 2d DCA 2001) (Schiavo I).
As a result of an earlier motion for relief from judgment, we required the trial court to reconfirm that medical science offered no meaningful treatment for her condition. In re Guardianship of Schiavo, 800 So.2d 640 (Fla. 2d DCA 2001) (Schiavo III). The trial court decided not only to reconfirm that issue but also to review its earlier decision that Mrs. Schiavo was in a persistent vegetative state. Following another extensive hearing at which many highly qualified physicians testified, the trial court denied the motion for relief from judgment. This court affirmed that decision. In re Guardianship of Schiavo, 851 So.2d 182 (Fla. 2d DCA 2003) (Schiavo IV).
The trial court's decision does not give Mrs. Schiavo's legal guardian the option of leaving the life-prolonging procedures in place. No matter who her guardian is, the guardian is required to obey the court order because the court, and not the guardian, has determined the decision that Mrs. Schiavo herself would make.
The legal process utilized by the trial court in this case is not new. Long before Mrs. Schiavo suffered her heart attack[2] in February 1990, the Supreme Court of Florida had already determined that the express right of privacy in article I, section 23, of the Florida Constitution gave both competent and incompetent persons the *816 right to forego life-prolonging procedures. See John F. Kennedy Mem'l Hosp. v. Bludworth, 452 So.2d 921 (Fla.1984); see also Corbett v. D'Alessandro, 487 So.2d 368 (Fla. 2d DCA 1986); In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984). In Corbett, this court interpreted this constitutional protection to apply not only to persons who have the foresight and resources to prepare a living will, but also to those whose wishes have not been reduced to writing. Earlier, in Barry, the right had been recognized by this court for a child who could not have prepared a written directive.
Both the Supreme Court of Florida and this court have concluded that the decision to "terminate artificial life supports is a decision that normally should be made in the patient-doctor-family relationship." Bludworth, 452 So.2d at 926; see also [In re Guardianship of] Browning, 543 So.2d 258 (Fla. 2d DCA 1989), approved, 568 So.2d 4 (Fla.1990). We have, however, emphasized that the courts remain open to make these decisions under the Florida Constitution when family members cannot agree or when a guardian believes that it would be more appropriate for a neutral judge to make the decision. See, e.g., Bludworth, 452 So.2d at 926-27; Browning, 543 So.2d at 269. As we explained in Schiavo I, this is the approach that Mr. Schiavo, in his capacity as legal guardian of his wife, selected in light of the bitter conflict within this family.
Following the exhaustion of all appellate review of both the final judgment that was entered in February 2000 and the order denying the subsequent motion for relief from judgment, the trial court ordered that, on October 15, 2003, the hospice facility must cease supplying nutrition and hydration through Mrs. Schiavo's feeding tube. The hospice facility obeyed this order. On October 21, 2003, the legislature enacted chapter 2003-418, and the Governor signed the act into law. Pursuant to this new act, the Governor ordered a stay, which both this court and the trial court honored. Thus, the hospice facility restored the supply of nutrition and hydration through the feeding tube. Thereafter, the supreme court unanimously held that chapter 2003-418 was unconstitutional as a violation of the separation of powers under the Florida Constitution. Bush v. Schiavo, 885 So.2d 321 (Fla.2004).
Before chapter 2003-418 was held unconstitutional, the Governor requested the Chief Judge of the Sixth Judicial Circuit to appoint a special guardian ad litem for Mrs. Schiavo. Chief Judge David Demers honored that request and appointed a guardian ad litem. The guardian, Dr. Jay Wolfson, has degrees in both law and public health. He submitted a lengthy report to both the court and the Governor. In his summary, Dr. Wolfson stated, in part:
The [guardian ad litem] concludes that the trier of fact and the evidence that served as the basis for the decisions regarding Theresa Schiavo were firmly grounded within Florida statutory and case law, which clearly and unequivocally provide for the removal of artificial nutrition in cases of persistent vegetative states, where there is no advance directive, through substituted/proxy judgment of the guardian and/or the court as guardian, and with the use of evidence regarding the medical condition and the intent of the parties that was deemed, by the trier of fact to be clear and convincing.
Now, the Schindlers have filed a motion in the trial court, pursuant to Florida Rule of Civil Procedure 1.540(b)(4), for relief from the judgment, claiming that the trial court's February 2000 judgment is void. This is one of the exceptional grounds on which a judgment that is more than one *817 year old may be challenged. This ground, however, is generally limited to circumstances in which the trial court enters a judgment when it lacks jurisdiction over the subject matter of the case or jurisdiction over the parties. See Curbelo v. Ullman, 571 So.2d 443, 445 (Fla.1990); Varnes v. Kirk, 251 So.2d 324 (Fla. 1st DCA 1971). See generally Bruce J. Berman, Florida Civil Procedure ¶ 540.5(d), at 668 (West Fla. Practice Series 2003 ed.). As the supreme court stated in Curbelo:
It is well settled that where a court is legally organized and has jurisdiction of the subject matter and the adverse parties are given an opportunity to be heard, then errors, irregularities or wrongdoing in proceedings, short of illegal deprivation of opportunity to be heard, will not render the judgment void. State ex rel. Fulton Bag & Cotton Mills v. Burnside, 153 Fla. 599, 15 So.2d 324 (1943).
571 So.2d at 445.
In this case, it is beyond any question that the trial court obtained lawful jurisdiction over the subject matter of this guardianship and the person of Mrs. Schiavo at the inception of the guardianship in 1990. Thus, it is doubtful that the Schindlers' most recent motion for relief from judgment contains even a facially sufficient claim.
In their brief, the Schindlers first argue that the judgment is void because the trial court, and not a guardian, made the decision as to what Mrs. Schiavo would elect to do in light of her persistent vegetative state. Despite the well-established law authorizing this process as a method to fulfill the patient's right of privacy under the Florida Constitution, the Schindlers argue that this process provides insufficient due process and violates Mrs. Schiavo's right to privacy. The right of the trial judge to make this decision for Mrs. Schiavo, relying on clear and convincing evidence of the decision that she herself would have made, is a matter that the Schindlers raised in the first appeal. This court expressly rejected these arguments several years ago. See Schiavo I, 780 So.2d at 179. Thus, these arguments are not only issues that would not render a judgment void, but they are also issues that have long been resolved in this case.
The Schindlers also argue that the judgment is void because Mrs. Schiavo was denied a full and fair opportunity to defend her rights in this case. As we have explained in the past, this is not a case where the trial court validated the guardian's decision for the ward without a full and independent inquiry. Instead, both Mr. Schiavo and the Schindlers were allowed to present evidence to the trial court as if each were her guardian. Id. The trial court then made its decision pursuant to law and based upon a heightened standard of proof. That decision has been subject to appeals and postjudgment scrutiny of all varieties, and it remains a valid judgment pursuant to the laws and the constitution of this state. Not only has Mrs. Schiavo's case been given due process, but few, if any, similar cases have ever been afforded this heightened level of process.
We note that the case law generally allows a party to file only one motion for relief under rule 1.540(b). See Berman, supra ¶ 540.5(b). Indeed, courts have taken the position that they lack authority "to entertain a second motion for relief from judgment which attempts to relitigate matters settled by a prior order denying relief." Steeprow Enters., Inc. v. Lennar Homes, Inc., 590 So.2d 21, 23 (Fla. 4th DCA 1991) (citing Atlas v. City of Pembroke Pines, 441 So.2d 652, 652 (Fla. 4th DCA 1983), 450 So.2d 485 (Fla.1984)); accord Malicoat v. LaChappelle, 390 So.2d 481, 482 (Fla. 4th DCA 1980). Because of *818 the nature of this case, neither the trial court nor this court has enforced these general rules. The Schindlers have filed numerous motions, but they have failed to present any lawful basis for relief from judgment.
For those of us who are not trained physicians and who do not deal on a daily basis with patients in vegetative states, or with the difficult decision to remove life-sustaining treatment, the images of Mrs. Schiavo's face are haunting. But the images do not reveal the full extent of the devastation to her brain and her inability to engage in cognition. Dr. Wolfson, the guardian who was appointed at the request of the Governor, visited Mrs. Schiavo many times in 2003. He was unable to independently observe any "consistent, repetitive, intentional, reproducible interactive and aware activities." His report does not challenge the now well-established medical diagnosis that Mrs. Schiavo's movements are merely reflexive. As he explained: "This is the confusing thing for the lay person about persistent vegetative states."
Our previous statements on the matter apply with undiminished relevancy in this appeal:
The judges on this panel are called upon to make a collective, objective decision concerning a question of law. Each of us, however, has our own family, our own loved ones, our own children. From our review of the videotapes of Mrs. Schiavo, despite the irrefutable evidence that her cerebral cortex has sustained the most severe of irreparable injuries, we understand why a parent who had raised and nurtured a child from conception would hold out hope that some level of cognitive function remained. If Mrs. Schiavo were our own daughter, we could not but hold to such a faith.
But in the end, this case is not about the aspirations that loving parents have for their children. It is about Theresa Schiavo's right to make her own decision, independent of her parents and independent of her husband. In circumstances such as these, when families cannot agree, the law has opened the doors of the circuit courts to permit trial judges to serve as surrogates or proxies to make decisions about life-prolonging procedures. See In re Guardianship of Browning, 568 So.2d 4 (Fla.1990) (affirming In re Guardianship of Browning, 543 So.2d 258, 273-74 (Fla. 2d DCA 1989)); see also § 765.401(3), Fla. Stat. (2000). It is the trial judge's duty not to make the decision that the judge would make for himself or herself or for a loved one. Instead, the trial judge must make a decision that the clear and convincing evidence shows the ward would have made for herself. § 765.401(3). It is a thankless task, and one to be undertaken with care, objectivity, and a cautious legal standard designed to promote the value of life.
Schiavo IV, 851 So.2d at 186-87.
We are well aware that many people around the world disagree with the trial court's decision. However, when he became a judge, the trial court judge took an oath, required by the Florida Constitution, to obey the rule of law and the constitution of this state. The trial judge followed and obeyed the law as set out by the precedent of the Supreme Court of Florida and by the general laws adopted by the Legislature. The trial judge made this most difficult decision after fully considering the evidence and applying a heightened standard of proof that is designed to protect society's interest in sustaining life.
It is important for all to understand that the Florida Constitution has long been interpreted *819 to authorize the process used by the trial court in this case. The legislature has passed general laws implementing these constitutional rights.[3] Neither the trial court nor this court can change this established law at this stage of these proceedings. No one who considers the dismal history of countries in which courts and judges have abandoned the rule of law would ask us to abandon the rule of law even in this case.
Accordingly, we affirm the trial court's denial of this motion for relief from judgment, and we deny the motion for stay pending appeal. In light of the trial court's order requiring the removal of life-sustaining procedures effective Friday, March 18, 2005, and given the lack of merit in the issues pursued in this appeal, we issue our mandate in conjunction with this opinion, and we will not entertain any motions for rehearing.
Affirmed; motion for stay denied.
FULMER and WALLACE, JJ., Concur.
NOTES
[1] See In re Guardianship of Schiavo, No. 90-2908-GD, 1996 WL 33496839 (Fla. Pinellas Cir. Ct. Feb. 11, 2000) (order authorizing discontinuation of artificial life support); In re Guardianship of Schiavo, 780 So.2d 176 (Fla. 2d DCA 2001) (Schiavo I), review denied, 789 So.2d 348 (Fla.2001); In re Guardianship of Schiavo, 792 So.2d 551 (Fla. 2d DCA 2001) (Schiavo II); In re Guardianship of Schiavo, 800 So.2d 640 (Fla. 2d DCA 2001) (Schiavo III), review denied, 816 So.2d 127 (Fla.2002); Schindler v. Schiavo ex rel. Schiavo, 829 So.2d 220 (Fla. 2d DCA 2002) (table citation denying motion); In re Guardianship of Schiavo, No. 90-2908-GD-003, 2002 WL 31876088 (Fla.Cir.Ct. Nov.22, 2002); In re Guardianship of Schiavo, No. 90-2908-GB-003, 2002 WL 31817960 (Fla.Cir.Ct. Nov.22, 2002); Schiavo v. Schiavo, No. 8:03-cv-1860-T-26TGW, 2003 WL 22469905 (M.D.Fla. Sept.23, 2003); In re Guardianship of Schiavo, 851 So.2d 182 (Fla. 2d DCA 2003) (Schiavo IV), review denied, 855 So.2d 621 (Fla. 2003); Schindler v. Schiavo, 865 So.2d 500 (Fla. 2d DCA 2003) (table decision denying prohibition); Advocacy Ctr. for Persons with Disabilities, Inc. v. Schiavo, 17 Fla. L. Weekly Fed. D291, 2003 WL 23305833 (M.D.Fla. Oct. 21, 2003); Schiavo v. Bush, No. 03-008212-CI-20, 2003 WL 22762709 (Fla.Cir.Ct. Nov. 4, 2003); Bush v. Schiavo, 861 So.2d 506 (Fla. 2d DCA 2003); Schiavo v. Bush, No. 03-008212-CI-20, 2004 WL 628663 (Fla.Cir.Ct. 2004); Bush v. Schiavo, 866 So.2d 136 (Fla. 2d DCA 2004); Schindler v. Schiavo, 866 So.2d 140 (Fla. 2d DCA 2004); Bush v. Schiavo, 871 So.2d 1012 (Fla. 2d DCA 2004); Schiavo v. Bush, No. 03-008212-CI-20, 2004 WL 980028 (Fla.Cir.Ct. May 5, 2004); Bush v. Schiavo, 885 So.2d 321 (Fla.2004), cert. denied, 543 U.S. 1121, 125 S.Ct. 1086, 160 L.Ed.2d 1069 (2005); Schindler v. Schiavo, 916 So.2d 5 (Fla. 2d DCA 2004) (table decision); In re Guardianship of Schiavo, No. 90-2908-GD-003, 2005 WL 459634 (Fla.Cir.Ct. Feb.25, 2005).
[2] Dr. Jay Wolfson, the guardian ad litem appointed by Chief Judge David Demers at the request of Governor Jeb Bush, reported that the heart attack was brought on by "a dramatically reduced potassium level in Theresa's body." She was only twenty-seven years old at the time of the heart attack. Dr. Wolfson reports that she apparently had been using an "aggressive weight loss" program to control her weight and may have been suffering from an eating disorder such as bulimia.
[3] While this case has been pending, sections 765.401 and 765.404, Florida Statutes (1999-2003), have been amended several times. In chapter 2000-295, the legislature created an End-of-Life Care Workgroup, which submitted a lengthy report on December 31, 2000, containing various recommendations. Those recommendations resulted in a proposed amendment to section 765.401(3) that expanded the powers of a proxy to make a decision based on the patient's best interests "if there is no indication of what the patient would have chosen." The legislature passed that proposal during the 2001 legislative session, and Governor Bush approved this amendment in June 2001. The bill became law on July 1, 2001. See ch.2001-250, Laws of Florida. This expanded power of the proxy was not utilized in this case. In this case, the trial court made the decision that "would have been the one the patient would have chosen had the patient been competent." See § 765.401(3), Fla. Stat. (1997).